The STATE of Texas, in Behalf of Elizabeth (Green) WILLIAMS, Appellant,

v.

Robert Lynn GREEN Jr., Appellee.

No. 3-87-003-CV.

Court of Appeals of Texas, Austin.

March 9, 1988.

Charles G. Childress, Asst. Atty. Gen., San Antonio, for appellant.

Mary Joe Carroll, Clark, Thomas, Winters & Newton, Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant Elizabeth Green Williams seeks to set aside an order of the district court of Travis County that dismissed her motion to modify a pre-existing child support order. The district court signed the dismissal order pursuant to appellee Robert Lynn Green's motion requesting that the court require the Attorney General of Texas to show his authority to prosecute Elizabeth's motion for modification. This Court will affirm the order dismissing the motion to modify.

By the payment of a minimal fee, Elizabeth Williams secured the services of the Attorney General of Texas to represent her in her effort to modify (increase) a pre-existing child support order. She and Green were divorced by order signed on Decem-

ber 26, 1979. The parties had one child, a son born on April 4, 1974. The district court appointed Elizabeth managing conservator and the court ordered her former husband to pay $175.00 each month as child support until December 1, 1982, at which time the sum increased to $200.00 each month. Both parties were represented by private attorneys in the divorce proceeding.

On March 2, 1982, Elizabeth, again represented by a private attorney, filed a motion to modify the pre-existing child support order. She was successful. The district court increased the child support to $375.00 each month beginning on May 1, 1982. That order, signed on April 23, 1982, also contained changes in visitation rights, provisions relating to the child's health care, requirements for payment of insurance and uninsured medical and dental expenses and provisions for accountings. This modification order was expressly agreed upon by the parties.

In July 1986, Elizabeth, this time represented by the Attorney General of Texas, filed yet another motion to modify (increase) the pre-existing child support order by an unspecified sum. By her motion, Elizabeth did not contend that Green had failed to pay any court-ordered child support.

After hearing, the district court signed an order dismissing Elizabeth's motion to modify. In its order, the district court found that there was no statutory authority for the Attorney General to represent Elizabeth. The district court ordered that the motion to modify be dismissed "without prejudice to the right of [Elizabeth] to refile the same by counsel other than the Attorney General of the State of Texas."

By her single point of error, Elizabeth claims that the district court erred in dismissing the motion to modify for the reason that the Attorney General "has authority to initiate legal actions to increase child support." [1]

1. Elizabeth filed a notice of appeal pursuant to Tex.App.R. 40(a)(2). The notice of appeal con-

tains the following statement: "As the appeal is made by the ATTORNEY GENERAL of the State

The claimed source of authority for the Attorney General's representation of Elizabeth is found in Human Resources Code § 76.007 that provides:

"Attorneys employed by the attorney general may represent the state or other parties in a suit *to establish a child support obligation, collect child support, or determine paternity* brought under the authority of federal law or this chapter." (Emphasis added.)

Tex.Hum.Res.Code Ann. § 76.007 (Supp. 1988).

Because § 76.007 empowers the Attorney General to represent a private person in a suit "to *establish* a child support obligation," (emphasis supplied) Elizabeth reasons that the Attorney General is also authorized to represent her in her effort to *modify* (increase) a pre-existing child support order. This Court does not agree.

If the meaning of a statute is plain and unambiguous, there is no need to resort to the rules of construction. *Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405 (1957). In such case, the Court will apply and enforce the statute as it reads. *Gateley v. Humphrey*, 151 Tex. 588, 254 S.W.2d 98 (1952).

Section 76.007 authorizes the Attorney General to represent private persons by filing suit in three specific situations:

(1) to establish a child support obligation

(2) to collect child support

(3) to determine paternity

By her motion, Elizabeth was obviously not attempting to collect past due child support nor was she attempting to determine paternity. Instead, it is plain that she sought the modification of a pre-existing child support order to increase Green's child support obligation.

Because the meaning of the phrase "to establish a child support obligation" is not ambiguous, but instead is straight-forward and clear, it is unnecessary for this Court to indulge in conjecture as to the intentions of the legislature. Instead, the language, being plain and clear, should be given effect as written. *Gateley v. Humphrey, supra.* It is manifest that "to establish a child support obligation" is to *create* an obligation to pay child support when one did not before exist.

The legislature is no stranger to the motion for modification practice now set out in Texas Family Code § 14.08.[2] As a matter of fact, the legislature has amended § 14.08 more than a few times. Being entirely familiar with the concept of motions for modification, the legislature would have most certainly employed that term in § 76.007 had it, in fact, intended

---

of Texas on behalf of ELIZABETH (GREEN) WILLIAMS, no appeal bond is required."

Although not briefed by the parties, there seems to be doubt that Elizabeth has perfected an appeal from the district court's order of dismissal. Rule 40(a)(2) provides in pertinent part:

When security for costs on appeal *is not required by law,* the appellant shall in lieu of a bond file a written notice of appeal with the clerk or judge which shall be filed within the time otherwise required for filing the bond. (emphasis supplied)

Presumably, the Attorney General takes the position that a bond is not required by reason of Tex.Civ.Prac. & Rem.Code § 6.001:

(a) A governmental entity or officer listed in *Subsection (b) may not be required to file a* bond for court costs incident to a suit filed by the entity or officer or for an appeal or writ of error taken out by the entity or officer and is not required to give a surety for the issuance of a bond to take out a writ of attachment, writ of sequestration, distress warrant, or writ of garnishment in a civil suit.

(b) The following are exempt from the bond requirements:
(1) this state;
(2) a department of this state;
(3) the head of a department of this state;
. . .

*Elizabeth Green Williams* has taken this appeal, however, and not the (1) State, (2) a department of this state or (3) the head of a department of this state.

**2.** The power of the district court to alter or change child support orders has long been recognized. *Ex parte Roberts*, 139 Tex. 644, 165 S.W.2d 83 (1942). After Title 2 of the Texas Family Code became effective in 1974, the proceeding to alter or change a pre-existing child support order became known as a "motion to modify." *See* Tex.Fam.Code Ann. § 14.08 (1986 & Supp.1988).

that the Attorney General have the authority to represent private persons in their efforts to increase pre-existing child support orders.

The order of the district court is in all things affirmed.

Affirmed.

GAMMAGE, Justice, dissenting.

I respectfully dissent.

The Attorney General of Texas, in behalf of Elizabeth Williams, sued Robert Lynn Green, Jr. for increased child support. Green filed a motion to disqualify the Attorney General for lack of authority to represent Williams. The district court entered judgment that the Attorney General has no statutory authority to represent Williams and dismissed the motion to modify child support without prejudice. I conclude the Attorney General does have the authority to represent Williams and would reverse the judgment and remand the cause for trial on the merits.

Williams and Green were divorced on December 26, 1979. Williams was named the managing conservator of their five-year-old son and Green was initially ordered to pay $175 per month child support, with an increase to $200 per month in December 1982. Both parties were represented by private attorneys.

In March 1982 Williams sought an increase in child support with the help of a private attorney. Williams was successful and Green's support obligation increased to $375 per month. Green is current on his payments, but Williams contends circumstances have now substantially and materially changed warranting an increase in Green's support obligation. Williams retained the Attorney General to represent her in this suit to increase child support. Green objected to the Attorney General's participation in the suit and the district court entered judgment that the Attorney General has no statutory authority to represent Williams in a suit to modify child support.

The relevant statute reads in pertinent part as follows:

Attorneys employed by the attorney general may represent the state or other parties in a suit to establish a child support obligation, collect child support, or determine paternity brought under authority of federal law or this chapter.

Tex.Hum.Res.Code Ann. § 76.007 (Supp. 1988). Green argues that establishing and modifying a support obligation are distinct actions in the Texas Family Code and the Legislature intended to so limit the Attorney General's power. Because the Legislature was looking to federal law rather than the Family Code when it enacted § 76.007, this narrow interpretation of "establish" is inappropriate. Obtaining a modification of an inadequate support order *is* establishing a child support obligation when viewed in light of the Legislature's intent in enacting § 76.007.

Green argues Chapter 76 of the Human Resources Code must be read together with Chapter 14 of the Family Code and that the *expressio unis* rule mandates that the failure of the Legislature to mention "modification" in § 76.007 precludes the Attorney General from exercising that power. Such an approach might be appropriate if the language of § 76.007 were taken from the Family Code, but an examination of the statute shows otherwise.

Human Resources Code § 76.007 enumerates the following categories of authority:

1) establish a child support obligation;

2) collect child support; and

3) determine paternity.

Tex.Hum.Res.Code Ann. § 76.007 (Supp. 1988).

Family Code § 14.05 does not mention "establishing a child support obligation." It merely states the court may order periodic or lump-sum payments. Tex.Fam. Code Ann. § 14.05 (Supp.1988). The court merely sets the amount because the *obligation* is already established by virtue of the parent-child relationship. Tex.Fam.

Code Ann. § 12.04(3) (1986). The Family Code does not refer to "child support collection," but to *enforcement* through various procedures. Tex.Fam.Code Ann. §§ 14.30–86 (Supp.1988). Finally, the Family Code's nomenclature for determination of paternity is "a suit to establish the parent-child relationship." Tex.Fam.Code Ann. § 13.01 (Supp.1988).

It is well settled that "when the intent and purpose of the Legislature is manifest from a consideration of a *statute as a whole,* words will be restricted or enlarged in order to give the statute the meaning which was intended by the lawmakers." *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957) (emphasis added). Furthermore, "in determining the meaning, intent, and purpose of a law ..., the history ... out of which it grew, and to which it may be rationally supposed to bear some relationship, the evils intended to be remedied, and the good to be accomplished, are proper subjects of inquiry." *Wortham v. Walker,* 133 Tex. 255, 128 S.W.2d 1138, 1150 (1939) (citing *Travelers' Insurance Co. v. Marshall,* 76 S.W.2d 1007, 1012 (Tex. 1934); 96 A.L.R. 802, par. 7).

Our responsibility is to determine the intent of the Legislature and construe the statute to effectuate the legislative purpose. *Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex.App.1986, writ ref'd n.r.e.). The stated purpose of enacting § 76.007 was to enable Texas to participate in federal matching-grant programs. Tex.Hum.Res.Code Ann. § 76.001 (Supp.1988).

The federal program pertinent to this cause is the Child Support Enforcement Act. 42 U.S.C.A. § 651–62 (West Supp. 1988). The purpose of that act is to enforce the support obligations owed by absent parents to their children. *Id.* at § 651. As amended in 1984, § 651 of the act emphasizes the need to assure that "assistance in obtaining support will be available ... to all children ... for whom such assistance is requested." *Id.* at § 651.

Under the Child Support Enforcement Act each state must designate an agency—in this case, the Attorney General of Texas—to administer a statewide child-support plan. *Id.* at § 654(3). Under the plan a state must seek "to secure support" for any child requesting assistance, if the state wishes to share in federal monies appropriated to enforce child support. *Id.* at § 654(4)(B).

The Secretary of Health and Human Services of the United States is required to establish standards for the states to follow in insuring the effectiveness of the Child Support Enforcement Act. *Id.* at § 652(a)(1). Under the heading "Establishment of support obligations," the Secretary requires each state to *"review* the support obligation periodically and whenever the ... agency becomes aware of changes in the *factors which determine the amount of the support obligation."* 45 C.F.R. § 303.4(c) (1986) (emphasis added).

The implicit purpose of the federal statute is to provide assistance in securing and enforcing *adequate* child support obligations. The specific words of a statute, no matter how unambiguous they may appear individually, should be construed in view of the context of their use and the legislative purpose of the entire statute. To say otherwise—that the Attorney General may enforce what may be inadequate support obligations but may not seek to make those obligations adequate—undermines the intent of both the state and federal acts to the point of absurdity. This we may not do. *Professional Mobile Home Transport v. Railroad Comm'n,* 733 S.W.2d 892, 899 (Tex.App.1987, writ ref'd n.r.e.). In terms of effectuating the purpose of the state and federal statutes, I see no valid or substantive distinction between seeking to modify what has become —due to changed circumstances—an inadequate support obligation by *establishing* one which will be adequate, and initially establishing the obligation; nor do I see any distinction between seeking to modify existing inadequate support obligations obtained under the act and those obtained outside it with the assistance of private

counsel—changed circumstances may render them equally inadequate.

I conclude the State must answer requests for assistance to increase inadequate child support obligations in order to continue participating in the federal Child Support Enforcement Act. Because the Legislature indicated the purpose of enacting § 76.007 of the Human Resources Code was to enable Texas to participate in federal programs, the Attorney General may properly represent Williams in this case.

I would reverse the judgment and remand the cause for trial on the merits.