**In the INTEREST OF M.C.R., H.M.R., and K.M.R., Minor Children.**

No. 04–00–00635–CV.

Court of Appeals of Texas,
San Antonio.

July 18, 2001.

Rhonda Amkraut Pressley, Asst. Atty. Gen., Austin, for Appellant.

Lawrence L. Garcia, Garcia, Teneyuca & Reznicek, San Antonio, for Appellee.

Before LÓPEZ, Justice, GREEN, Justice, and ANGELINI, Justice.

LÓPEZ, Justice.

The Attorney General challenges the district court's allocation of prejudgment interest in this appeal of a judgment confirming child support arrearages. We reverse the trial court's judgment and remand the cause for further proceedings in accordance with this opinion.

## BACKGROUND

Michael and Lisa Riou divorced in 1989. The decree appointed Michael sole managing conservator of their children and expressly did not order Lisa to pay child support. In 1990, the court entered an order modifying the decree and required Lisa (now Lisa Harris) to make monthly child support payments of $100.00. a month. Shortly thereafter, Harris stopped paying child support. In 1997, the Attorney General filed a motion to enforce Harris's court-ordered child support obligation. Harris filed a general denial and a plea for modification of conservatorship. The parties reached an agreement on all issues except on the motion for contempt for non-payment of child support, which was tried to a child support master.

At the contempt hearing, according to the master's notes:

Lisa Harris testified that she was first ordered to pay child support in 1990 and initially she paid as ordered. She stopped paying after a conversation with Mr. Riou's wife in which Ms. Harris understood that Mr. and Mrs. Riou would not be expecting her to pay child support any more [sic] because Ms. Harris and her husband were having such a "difficult time." In 1997, Ms. Harris received a letter from the Attorney General's Office that Mr. Riou was seeking payment of child support and garnishment of Ms. Harris' salary began at that time. Ms. Harris has not missed a payment since that time and is helping her son, one of the subject children in this case, with college expenses. Ms. Harris testified that at the time of the conversation with Ms. Riou, "they were friends." Ms. Harris testified that she has never been to court before for violating a court order.

The master's notes indicate that Michael Riou testified:

that he knew that his wife had a conversation with Ms. Harris about the child support and testified that his understanding was that Ms. Harris would miss only one month of child support. He testified further that he never contacted Ms. Harris about why the child support was not being made. He also testified that he and his wife were not "friends" with Ms. Harris and her husband and, in fact, Ms. Harris assaulted his wife at one time. Mr. Riou testified that he had no verbal agreement that Ms. Harris was to discontinue the child support. He contacted the Attorney General's Office in 1997 to collect the unpaid child support.

The master determined that there was "no meeting of the minds and therefore no oral agreement existed." The master found the parties had made mutual mistakes and Lisa Harris was not in contempt. The master awarded $8,524.75 in unpaid child support to Michael Riou, and "awarded one-half [the accrued interest] to Ms. Harris and one-half to Mr. Riou in order to equitably resolve the mistake of each party." The assistant attorney general objected to the finding of "no interest accruing on the judgment," arguing that the interest is statutory and not before the court. The master noted for her record that "when a statute yields an unjust result, equity may rule in bringing fairness to the matter." The master then asked the assistant attorney general what monetary interest the State held in this matter. The assistant attorney general replied, "Zero," and the master questioned whether the Attorney General had standing in the matter.

The Attorney General appealed the ruling to the district court. The district court reviewed the master's docket entries, heard argument from counsel, and adopted the master's ruling. In this appeal, the Attorney General raises four issues: (1) whether the district court has discretion to award less than all interest accrued on past-due child support; (2) whether accrued interest is part of the child support arrearage, which cannot be reduced by the court; (3) whether the parties' initial agreement to forego any child support payments was effective when it lacked the express approval of the court of continuing, exclusive jurisdiction; and (4) whether the parties can compromise child support arrears before the full amount of arrears is reduced to judgment.

## PLEA TO THE JURISDICTION

Harris asserts that the parties in interest are not in dispute and the Attorney General has no standing to appeal, thus no

controversy is joined to invoke our jurisdiction. It is clear from the record that Harris and Riou do not seek to appeal the district court's ruling. Thus, our jurisdiction must be premised, if at all, on the Attorney General's standing to appeal.

■ To establish standing, a person must show a justiciable interest, that is, a personal stake in the controversy. *In the Interest of B.I.V.* 923 S.W.2d 573, 573 (Tex. 1996); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *Precision Sheet Metal Mfg. v. Yates,* 794 S.W.2d 545, 551 (Tex.App.— Dallas 1990, writ denied). The Attorney General anchors its claim to standing on three footings: (1) its independent standing as the State's Title IV–D agency, conferred by the Legislature and recognized by the courts; (2) an unterminated statutory assignment of Riou's rights which was recognized by the trial court's Order of Assignment, and (3) its status as a party to the trial court's judgment.

■ We recognize that the Legislature has given the Attorney General standing to file a child support action, as it did in this case. *See* TEX. FAM.CODE ANN. §§ 102.007, 231.101 (Vernon Supp.2001). The Attorney General is authorized by statute to "provide services for the benefit of a child without regard to whether the child has received public assistance." *Id.* at § 231.102. This authority has evolved over the years to comply with federal welfare reform law, which sets standards for the states to increase efficiency and uniformity in child support enforcement proceedings. Texas, in meeting these standards, is able to participate in federal matching-grant programs for this purpose. *See generally State ex rel. Williams v. Green,* 746 S.W.2d 940, 944 (Tex.App.—Austin 1988, writ denied) (Gammage, J., dissenting) (discussing purpose of federal Child Support Enforcement Act, 42 U.S.C. § 651). Thus, the Attorney General has a broader interest in the uniform enforcement of child support than the individual parties who are joined in this controversy. That interest is independent of whatever monetary interest the State may have invested, if any, in seeking to ensure the best interest of the children in question.

■ Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. *See Texas Workers' Compensation Ins. Fund v. Mandlbauer,* 988 S.W.2d 750, 752 (Tex. 1999); *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 150 (Tex.1982); *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 92 (Tex.1973); *Shell Petroleum Corp. v. Grays,* 131 Tex. 515, 114 S.W.2d 869, 870 (Tex. Comm'n App.1938, opinion adopted).[1] An appellant has the burden of making a *prima facie* showing of prejudice. *Gorman v. Gorman,* 966 S.W.2d 858, 864 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *CNL Fin. Corp. v. Hewlett,* 539 S.W.2d 176, 178 (Tex.App.—Beaumont 1976, writ ref'd n.r.e.). When a parent applies to receive Title IV–D services, that application assigns the right to support to

---

1. An exception exists when the appellant is deemed to be a party under the doctrine of virtual representation. *See, e.g., Gunn v. Cavanaugh,* 391 S.W.2d 723, 725 (Tex.1965); *Jernigan v. Jernigan,* 677 S.W.2d 137, 140 (Tex.App.—Dallas 1984, no writ). To claim virtual representation, an appellant must show that: (1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment. *See Motor Vehicle Bd. of Tex. Dept. of Transp. v. El Paso Independent Auto. Dealers Ass'n, Inc.,* 1 S.W.3d 108, 110 (Tex.1999) *Continental Cas. Co. v. Huizar,* 740 S.W.2d 429, 432 (Tex.1987) (Kilgarlin, J., concurring). The Attorney General does not claim that its standing is premised on this doctrine.

the Attorney General for the purposes of establishing and enforcing child support and medical support obligations. *See* Tex. Fam.Code § 231.104.[2] The Attorney General has demonstrated its justiciable interest in the assignment of rights from Riou. Thus, Riou's acceptance of the district court judgment has no effect on the Attorney General's standing to appeal a ruling which adversely impacted the recovery of child support. *See id.* Accordingly, we find that the Attorney General has standing to bring this appeal and the plea to our jurisdiction is denied.

### Prejudgment Interest

█ The Attorney General's first issue asserts an abuse of discretion by the trial court in awarding less than all interest accrued on the child support arrearages. Prejudgment interest is, generally, recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. *Castle v. Harris,* 960 S.W.2d 140, 144 (Tex.App.—Corpus Christi 1997, no pet.); *see also Matthews v. DeSoto,* 721 S.W.2d 286, 287 (Tex.1986) (trial court discretion with regard to prejudgment interest would further complicate trial process). We have previously held that the trial court lacks discretion to increase or reduce the amount of prejudgment interest in a child support enforcement case as well as in other matters. *Medrano v. Medrano,* 810 S.W.2d 426, 428 (Tex.App.—San Antonio 1991, no writ); *see also San Antonio Villa Del Sol Homeowners Ass'n v. Miller,* 761 S.W.2d 460,

462 (Tex.App.—San Antonio 1988, no writ) (prejudgment interest on condominium maintenance fees recoverable as matter of right when ascertainable sum of money due and payable at definite time prior to judgment).

The Texas Family Code, in step with the federal mandates for uniform state plans of enforcement, has all but eliminated discretionary judgment from these proceedings. The Code provides that an unpaid child support payment "constitutes a final judgment for the amount due and owing, including interest." Tex. Fam.Code Ann. § 157.261. The trial court is required to confirm the amount in arrears and render a judgment which includes interest. *Id.* at § 157.263.

Appellee argues that the trial court *did* award all the interest accrued on the arrearage. Indeed, the court awarded half the accrued interest to the obligor and half to the obligee, which constitutes an award of 100% of the accrued interest. And it is clear that the child support master's recommendation and the district court's ruling were made in an attempt to render an equitable judgment.

█ The payment of child support arrearage, however, compensates for the wrong to the child at least as much as it reimburses the custodial parent for monies spent on the child. Past due child support is properly characterized as an unfulfilled duty to the child rather than a debt to the custodial parent. *Williams v. Patton,* 821 S.W.2d 141, 145 (Tex.1991). The trial

**2.** This code section also makes it clear that when the Attorney General engages in litigation to provide Title IV D services, pursuant to the Social Security Act, 42 U.S.C. § 651 *et seq.,* it does so on behalf of the State, and not the individual party for whom it seeks to impose child support obligations. *See id.* at § 231.109(d). The Attorney General does not assume the legal representation of the appli-

cant in this litigation. *See id.* And if the recipient of public assistance is not cooperative with the State's attorneys, the Attorney General has adopted as a general guideline that when "providing services required by federal and state law, the Title IV–D Agency may: ... appear as a party in any legal proceeding in any trial or appellate court." 1 Texas Admin. Code § 55.1(a)(4).

court does not have discretion to increase or reduce the arrearage or the interest. TEX. FAM.CODE ANN. § 157.262 (Vernon 1996) (formerly codified at TEX. FAM.CODE § 14.41(d)); *Williams,* 821 S.W.2d at 145. The legislature denied the court the authority to forgive child support arrearages by providing that the court shall confirm the amount of arrearages and render judgment for all unpaid child support. *Id.* at 143; *Matter of Marriage of Vogel,* 885 S.W.2d 648, 651 (Tex.App.—Amarillo 1994, writ denied). Section 157.262 of the family code provides:

> (a) In a contempt proceeding or in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages.
>
> (b) The money judgment for arrearages rendered by the court may be subject to a counterclaim or offset as provided by this subchapter.

TEX. FAM.CODE ANN. § 157.262. Courts interpreting this section have consistently held that while the amount of arrearages is subject to a counterclaim for offset, the trial court has no authority to reduce or modify the amount of arrearages in rendering judgment. *Curtis v. Curtis,* 11 S.W.3d 466, 471 (Tex.App.—Tyler 2000, no writ); *Vogel,* 885 S.W.2d at 651; *Attorney Gen. ex rel. South Carolina v. Besaw,* 877 S.W.2d 32, 35 (Tex.App.—Beaumont 1994, no writ). Accrued interest is clearly part of the child support obligation which is to be reduced to a money judgment. *See* TEX. FAM.CODE ANN. § 157.267.

 It has been said that the trial court acts as "a mere scrivener" who mechanically tallies the amount of arrearages. *Lewis v. Lewis,* 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ) (citing *Williams v. Patton,* 821 S.W.2d 141,

153 (Tex.1991)(Phillips C.J. dissenting)). In fact, even parents of the child may not settle child support claims until after the arrearages have been confirmed and cumulated in a money judgment or until the trial court has lost jurisdiction to enforce the unpaid child support debt. *Williams,* 821 S.W.2d at 146.

 The trial court is accorded broad discretion in setting and modifying child support payments. *See In re Davis,* 30 S.W.3d 609, 616 (Tex.App.—Texarkana 2000, no pet.). The trial court retains discretion in many other areas concerning child support. For example, the court may exercise discretion in determining the amount of monthly payment of the arrearages once the total amount is confirmed, *see Starck v. Nelson,* 878 S.W.2d 302, 308 (Tex.App.—Corpus Christi 1994, no writ); *Tamez v. Tamez,* 822 S.W.2d 688, 692 (Tex.App.—Corpus Christi 1991, writ denied); and in determining whether to extend the repayment schedule for a reasonable length of time upon a showing of unreasonable hardship on the part of the obligor, the obligor's family, or children for whom support is due from the obligor, *see* TEX. FAM.CODE § 158.007; *In re Chambers* 5 S.W.3d 341, 343 (Tex.App.—Texarkana 1999, no pet.). The court also has discretion in determining whether to award retroactive child support from the date of filing the voluntary petition to establish parentage through the date of the trial, *see* TEX. FAM.CODE § 160.005(b); *In re Guthrie,* 45 S.W.3d 719, 726–27 (Tex.App.— Dallas 2001, no pet.).[3]

 Although we can understand the rationale behind the recommendation of the child support master and the judgment rendered by the district court, we find that

---

**3.** This is not intended to be an inclusive list of discretionary areas, but merely to demonstrate the breadth of discretion which the Legislature has posited with the district court in child support matters.

the court had no discretion to reduce the arrearage amount by awarding half the accrued interest to the obligor. The court had a ministerial duty to confirm the amount of the arrearage plus accrued interest and render a money judgment in the total amount due and owing the obligee. Appellant's issues are sustained. We, therefore, reverse the judgment and remand the cause to the trial court for the purpose of recalculating and rendering a cumulative judgment which includes all of the interest on the delinquent child support accrued through June 28, 2000.