NO. 07-08-0440-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 17, 2009
_____

IN THE INTEREST OF A.C.B., A CHILD
_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 86-512,752-D; HONORABLE FELIX KLEIN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Stephen Barth, appeals a judgment that granted appellee, Becky Shurbet, a cumulative judgment for child support arrearage of $14,324.31 against Barth. By six issues, Barth appeals. We reverse in part and affirm in part.

Background

On November 14, 1984, Barth and Shurbet, while still married, had a child, A.C.B. Subsequently, Barth and Shurbet divorced. On August 6, 1999, the trial court rendered an order regarding Barth's visitation with A.C.B. and his child support obligations that was based on a Rule 11 agreement between Barth and Shurbet. On March 9, 2001, the trial

court signed an Order on a Motion to Modify that reflected the terms of the parties' agreement. On August 29, 2001, Shurbet filed a Motion for Contempt seeking enforcement of the March 9th Order. The following day, the trial court signed a Nunc Pro Tunc Addendum Order to Correct and Clarify Order Dated March 9, 2001.

A hearing was held on Shurbet's Motion for Contempt on December 19, 2001. At this hearing, Shurbet testified that Barth was in arrears on his monthly child support payments in an amount of $5,700.[1] The March 9th order also provided that Barth was to pay half of all tuition and fees incurred by A.C.B. for her attendance at Trinity Christian Schools; half of the cost for A.C.B.'s extracurricular activities, namely cheerleading and dance, limited to a total of $3,000 per year; and half of all uninsured medical expenses. Shurbet testified that A.C.B.'s tuition and fees, for the period from August 20, 1999, through August 2001, was $5,466.84. She testified that half of the extracurricular activities was $1,287.57. Shurbet testified that half of the medical expenses were $876.41. Shurbet testified that the total obligation owed by Barth, as of the time that the petition was filed, was $14,830.82.[2] Shurbet also testified that she owed Barth $2,500 that she had been ordered to pay him as well as $239.25 for a doctor's bill. Accounting for the $2,700 that Barth had paid toward his monthly child support obligation as well as offsetting the amounts that Shurbet recognized as owing to Barth, Shurbet testified that the total that

___

[1] Under the Rule 11 agreement, Barth was to pay $300 per month directly to Shurbet, beginning on September 1, 1999. In her testimony, Shurbet acknowledged that Barth had paid $2,700 toward this monthly obligation as of the date of the hearing.

[2] This amount reflects the total of child support obligations under the modification order without accounting for any offsets of monies paid by Barth or owed by Shurbet to Barth.

Barth owed, as of August 1, 2001, was $9,973.65.[3]  Shurbet testified, during cross-examination, that she did not submit copies of all of the medical bills to Barth within 10 days of her receipt of same, as was required by the March 9th Order.  Barth testified that the Trinity tuition was $415 per month.  Further, Barth admitted that he had stopped paying his monthly child support and that he had not made payments for A.C.B.'s tuition and fees, extracurricular activities, and unreimbursed medical expenses.  At the close of this hearing, the trial court stated that it would do some research and then notify the parties when it reached a decision.

On August 7, 2007, Shurbet filed a Motion to Enter Judgment on the Motion for Contempt that was filed on August 29, 2001.  The trial court held a hearing on the Motion to Enter Judgment on November 28, 2007.  At the conclusion of this hearing, the trial court rendered judgment that Barth's child support arrearages, as of the December 19, 2001 hearing, were $5,700 for monthly child support, $5,466.84 for tuition and fees, $1,287.50 for extracurricular activities, and $876.41 for medical expenses.  The court also found that Shurbet owed Barth $2,500.  The trial court awarded Shurbet $900 as reasonable attorney's fees.  In its Reformed Judgment for Child Support Arrearage, the trial court found that Barth's total child support arrearages, as of December 19, 2001, was $13,176.20.  The trial court then assessed interest on that amount from the date of the 2001 hearing.  The trial court also found that Shurbet owed Barth $2,500, assessed interest on that amount, and offset it from the judgment awarded to Shurbet.  After allowing

---

[3] It would appear that Shurbet's math is incorrect. $14,830.82 minus $2,700 minus $2,500 minus $239.25 results in a total of $9,391.57.

the offset, the trial court entered judgment in favor of Shurbet for a total of $13,131.14. However, the Reformed Judgment also granted a "cumulative judgment" to Shurbet for child support arrearage and interest in an amount of $14,324.31. The trial court entered findings of fact and conclusions of law regarding how it reached the award of $13,131.14 awarded to Shurbet. Notably, nothing in the findings of fact and conclusions of law nor the Reformed Judgment explains how the cumulative judgment amount was reached. In a timely filed motion for new trial, Barth identified that the Reformed Judgment failed to allow an offset of the $239.25 medical expense that Shurbet acknowledged owing Barth. The motion for new trial appears to have been overruled by operation of law.

By six issues, Barth appeals the Reformed Judgment for Child Support Arrearage. By his first three issues, Barth contends that the trial court abused its discretion in granting judgment for the tuition and fees, extracurricular activities, and medical expenses. By his fourth issue, Barth contends that the trial court erred in not offsetting his arrearage by the $239.25 medical expense that Shurbet acknowledged owing Barth. By his fifth issue, Barth contends that the trial court abused its discretion in granting prejudgment interest on the arrearages relating to tuition and fees, extracurricular activities, and medical expenses. By his sixth issue, Barth contends that the trial court abused its discretion in awarding its cumulative judgment.

Tuition and Fees, Extracurricular Activities, and Medical Expenses

By his first three issues, Barth contends that the trial court abused its discretion in granting judgment in favor of Shurbet on her claims for tuition and fees, extracurricular

4

activities, and medical expenses. Barth contends that there was no or insufficient evidence to support the amount of each of these expenses. Further, as to the tuition and fees and extracurricular activities, Barth contends that the evidence was insufficient to establish that Shurbet held any right to receive these awards since the order required Barth to pay these expenses directly to the provider. Finally, in regard to the medical expenses, Barth contends that Shurbet failed to establish that she complied with the order's requirement that she provide Barth with a copy of the bills within 10 days of her receipt of the bills.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions and are reviewable for legal and factual sufficiency. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). However, a trial court's decision to grant or deny the relief requested in a motion for enforcement[4] is reviewed for an abuse of discretion. See Beck v. Walker, 154 S.W.3d 895, 901 (Tex.App.–Dallas 2005, no pet.). Under this abuse of discretion standard, sufficiency of the evidence is not an independent ground of error, but rather is a relevant factor in assessing whether the trial court abused its discretion. Id. at 902. When an appellant challenges the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate that there is no evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In a legal sufficiency review, we must view the evidence in the light most favorable to the finding. Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). Viewing the evidence through this prism, we must ultimately determine whether the evidence is sufficient to enable

[4] Shurbet's Motion for Contempt included a request for enforcement.

reasonable and fair-minded people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing factual sufficiency on an issue on which appellant did not have the burden of proof, we consider and weigh all of the evidence in a neutral light and set aside the judgment only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). While we review the factual sufficiency of the evidence in a neutral light, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). An appellate court may not impose its own opinion to the contrary of the fact finder's implicit credibility determinations. See id.

In the present case, Shurbet testified that Barth failed to pay the expenses as ordered by the March 9th order. She testified that Barth owed $5,466.84 for tuition and fees for the period of August 20, 1999 through August 2001,[5] $1,287.57 for half of cheerleading and dance expenses, $630.50 for half of unreimbursed doctor's bills, and $245.91 for half of unreimbursed prescription bills. Barth testified that he has not made any payments toward the tuition and fees or extracurricular activities. Further, Barth testified that he has not paid for half of any of the bills for medical expenses that Shurbet sent him.

---

[5] While Shurbet's testimony appears to state a total amount for the tuition and fees, Barth testified that the total amount, from August 1999 through February 2000 was $3,450. Thus, the tuition and fees, based on Barth's testimony, runs just under $500 per month. Further, Barth testified that the tuition alone was $415 per month. Based on this evidence, it is reasonable to infer that the $5,466.84 reflects half of the tuition and fees incurred by A.C.B. over the two year period addressed by Shurbet's testimony.

While the testimony regarding the amounts Barth owed under the modification order was conclusory and came from an interested witness, uncontradicted evidence given by an interested witness presents an issue to be determined by the trier of fact. Berner v. Ferris, 538 S.W.2d 658, 659 (Tex.Civ.App.–Amarillo 1976, no writ) (citing Gevinson v. Manhattan Construction Co. of Okla., 449 S.W.2d 458, 467 (Tex. 1969)). One factor that the trier of fact can consider in assessing the credibility of the evidence is whether the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. Id. However, even if the evidence is not readily controvertible, an issue relating to the credibility of the witness is presented. Id. (citing James T. Taylor and Son, Inc. v. Arlington Indep. Sch. Dist., 160 Tex. 617, 335 S.W.2d 371, 376 (1960)). Thus, because the issue turns on the determination of the credibility of Shurbet, we must conclude that the trial court's finding of the amounts owed by Barth for tuition and fees, extracurricular activities, and medical expenses is supported by both legally and factually sufficient evidence.

However, Barth also contends that the evidence was not legally or factually sufficient to establish Shurbet's entitlement to receive this award. As to the tuition and fees, Barth contends that the modification order requires him to pay half of the Trinity Christian Schools's tuition and fees directly to the school and not to Shurbet. In the absence of evidence that A.C.B. did not attend Trinity Christian Schools during the period from August 1999 through August 2001 or that Shurbet did not pay the full amount of the tuition and fees charged by the school, we conclude that it would be reasonable for the fact finder to infer that Shurbet paid for the entire tuition and fees assessed during the applicable period

7

and that she was entitled to reimbursement for these payments that were ordered to be paid by Barth. Likewise, because there was no evidence that A.C.B. did not participate in extracurricular activities or that Shurbet did not pay the full amount of any fees charged for these services, we conclude that it would be reasonable for the fact finder to infer that Shurbet paid the expenses associated with these activities and is entitled to reimbursement for half of the expense. As to the medical expenses, the modification order provides that "the party who paid for a health care expense on behalf of the child shall submit to the other party any and all forms, receipts, bills, and statements reflecting the uninsured portion of the medical or health care expenses the paying party incurs on behalf of the child within ten days after he or she receives them." Shurbet testified that she did provide one April 4, 2000 bill within the 10 day window required by the order, but she also testified that there were "several" bills that were not presented within the 10 day deadline. Barth testified that one problem that he had with making the payments under the modification order was that Shurbet stopped taking A.C.B. to the psychologist, as was ordered. He testified that he believed that A.C.B. stopped going to the psychologist in May of 2000, although he received a bill for a session in July 2000. As a result, we believe that it is reasonable to infer that Barth received copies of each monthly psychologist bill through July of 2000. Even if Shurbet failed to provide copies of medical bills within the 10 day deadline established by the modification order, each parent is obligated to support his or her child during the child's minority and is liable to any other person, including the other parent, who provides necessities for that child. See Creavin v. Moloney, 773 S.W.2d 698, 702-03 (Tex.App.–Corpus Christi 1989, writ denied). Thus, based on an itemization of each of A.C.B.'s psychologist sessions found in Shurbet's Motion for Contempt and Barth's

8

acknowledgment that he had received bills for these sessions until July of 2000, we conclude that the evidence was both legally and factually sufficient to support an award of $522.50 for unreimbursed medical expenses. However, because there is no evidence to support the remaining $353.91 in medical expenses, we conclude that the evidence is legally insufficient to support the award of this amount of medical expenses and will reverse this portion of the trial court's judgment.

We sustain that portion of Barth's third issue that challenges the legal sufficiency of the evidence to support the award of $353.91 of the $876.41 the trial court awarded for unreimbursed medical expenses and, in all other respects, overrule Barth's first three issues.

Offset of $239.25

By his fourth issue, Barth contends that the trial court erred in failing to offset a portion of a doctor's bill that Shurbet acknowledged owing. As both Shurbet's Motion for Contempt and her testimony acknowledged this debt and, thus, it was not pled to be part of Barth's child support arrearage, we will sustain Barth's issue and will render judgment allowing a $239.25 offset on Barth's child support arrearage.[6]

---

[6] Because the evidence does not establish whether this doctor's bill was incurred for the treatment of A.C.B. or arose at a time when the modification order was in force, the evidence is insufficient to support prejudgment interest.

9

Interest on Child Support Arrearage

By his fifth issue, Barth contends that the trial court abused its discretion in granting prejudgment interest on the awards for tuition and fees, extracurricular activities, and medical expenses.[7] Because no payment date was specified in the modification order for tuition and fees and extracurricular activities, Barth contends that interest could not begin to accrue on these obligations until the trial court rendered judgment confirming these arrearages. As for the unpaid medical expenses, Barth contends that the payment date provided in the modification order was dependant upon proof of when the bills were sent to Barth. As such, Barth contends that interest could not begin to accrue on these amounts until the trial court entered its Reformed Judgment on August 1, 2008. Shurbet responds by arguing that the delinquency of the tuition and fees, extracurricular activities, and medical expenses was established as a matter of law by the December 19, 2001 hearing.

While a trial court's decision to grant or deny the relief requested in a motion for enforcement is reviewed for an abuse of discretion, Beck, 154 S.W.3d at 901, the trial court's discretion is very limited in calculating child support arrearages. See Attorney Gen. v. Stevens, 84 S.W.3d 720, 723 (Tex.App.–Houston [1st Dist.] 2002, no pet.). In a proceeding to confirm child support arrearages, the trial court's child support calculations must be based on the payment evidence presented and not on the trial court's assessment of what is fair or reasonable. See In re M.C.R., 55 S.W.3d 104, 108-09 (Tex.App.–San

---

[7] Barth does not contest the accrual of interest on unpaid monthly child support obligations by this appeal.

Antonio 2001, no pet.). Likewise, the trial court has no discretion to modify, forgive, or make equitable adjustments in awarding interest on child support arrearages. See id.

The Family Code provides that, if a motion for enforcement of child support requests a money judgment for arrearages, the court "shall confirm the amount of arrearages and render one cumulative money judgment" that includes interest on the arrearages. TEX. FAM. CODE ANN. § 157.263(a), (b)(3) (Vernon 2008). Awarding interest on child support arrearages is mandatory and the trial court has no discretion to not award the full amount of interest due. In re M.C.R., 55 S.W.3d at 108-09. Determining the date and the amount of the unpaid obligation is, therefore, necessary to calculate both the arrearage and the interest.

Thus, because the modification order did not state a due date for the tuition and fees or for the extracurricular activities, interest did not begin to accrue on these obligations until the date that the trial court signed the reformed judgment, August 1, 2008. See TEX. FAM. CODE ANN. § 157.266 (Vernon 2008); TEX. R. CIV. P. 329b(h). Therefore, we conclude that the trial court abused its discretion in awarding prejudgment interest for the unpaid tuition and fees and extracurricular activities.

As for the unpaid $522.50 for unreimbursed medical expenses, Barth acknowledged his receipt of bills relating to these expenses by, at least, the December 19, 2001 hearing. Thus, in regard to this portion of Shurbet's claim for unreimbursed medical expenses, they became delinquent and subject to the accrual of interest no later than 30 days after the December 19, 2001 hearing at which Barth acknowledged receipt of the bills relating to the

11

psychologist sessions. However, there is evidence in the record that would suggest that Barth may have received the psychologist's bills at an earlier date. As such, we conclude that the trial court erred in accruing interest on this $522.50 portion of the medical expenses from the date of the December 19, 2001 hearing. Even if we conclude that the trial court impliedly found that Barth received notice of these expenses at the December 19, 2001 hearing, under the modification order, interest on this arrearage would not begin to accrue until 30 days after the hearing. Because the date of Barth's receipt of these bills is a fact question, we will remand to the trial court to determine when Barth received these bills, when interest began to accrue, and to properly calculate the interest for this portion of the medical expenses. As for the remaining portion of the unreimbursed medical expenses claimed by Shurbet, Barth does not acknowledge receipt of these bills nor does the record include sufficient evidence of these bills.[8]

Thus, we conclude that the trial court abused its discretion in assessing prejudgment interest on the arrearages for unpaid tuition and fees and extracurricular activities. As we have previously reversed the trial court's finding of a $353.91 portion of unreimbursed medical expenses, the trial court abused its discretion in assessing interest on this arrearage. We reverse the trial court's assessment of prejudgment interest on the remaining $522.50 of the unreimbursed medical expenses and remand to the trial court to determine the date upon which interest began to accrue under the modification order.

---

[8] The only medical expenses specifically addressed at the hearing were those arising from A.C.B.'s psychologist counseling. Further, while it is clear from the record that Shurbet had copies of some of these bills at the hearing, these copies were not offered into evidence and, therefore, are not before this Court for review.

Variance Between Findings of Fact and Conclusions of Law
and the Cumulative Judgment Award

Finally, Barth contends that the trial court's cumulative award was in error because it varied from the trial court's findings of fact and conclusions of law. Due to our resolution of Barth's first five issues and our rendition of the amount of arrearages owed, we need not address the trial court's cumulative judgment award.

Conclusion

For the foregoing reasons, we reverse the trial court's assessment of interest on the $5,466.84 arrearage for unpaid tuition and fees and the $1,287.57 arrearage for unpaid extracurricular activities and render judgment that those arrearages are not entitled to the assessment of prejudgment interest. We reverse the trial court's determination of medical expense arrearage totaling $876.41, render judgment that the medical expense arrearage is $522.50, and remand to the trial court for a determination of the date upon which interest began to accrue on this arrearage and the calculation of the applicable prejudgment interest. Additionally, we render judgment that Barth is entitled to an offset of $239.25 against his arrearages. In all other respects, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


13