**Susan HERZFELD, Appellant,**

v.

**Ronald HERZFELD, Appellee.**

No. 05–06–00332–CV.

Court of Appeals of Texas, Dallas.

March 18, 2009.

Rehearing Overruled June 30, 2009.

Julia F. Pendery, Dallas, TX, for Appellant.

Jennifer Scherf, Frisco, TX, for Appellee.

Before Justices MORRIS, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

Susan Herzfeld appeals the trial court's orders relating to the disposition of the parties' real property and child support matters arising out of the parties' divorce. In five issues, appellant argues she was entitled to enforce the contract for her purchase of the parties' residence, a lien for past-due child support arose as a matter of law, she is entitled to pre-judgment interest, the trial court erred in its handling of a receiver, and no written order supported finding her in contempt. To the extent the trial court did not award interest, we reverse the trial court's order and remand for further proceedings. In all other respects, we affirm the trial court's orders.

Susan and Ronald Michael Herzfeld divorced in 1991. Among other things, the divorce decree ordered Ronald to pay $500 per month in child support until their two

children turned eighteen or graduated from high school. The decree also provided Susan would have exclusive possession of the parties' residence until Ronald's child support obligation ended. At that time, the residence would be sold at a "mutually agreeable" price. If the parties could not agree on a price, the residence would be sold under terms and conditions determined by a court-appointed receiver. During the time Susan had exclusive possession of the residence, the decree required that she make all payments of principal, interest, taxes, and insurance on the residence and perform all maintenance and repairs necessary to keep the residence in "its present condition." The net sales proceeds were to be distributed 75% to Susan and 25% to Ronald.

After the parties' youngest child graduated from high school in 1997, appellant continued to live in the house. Neither party took any action to enforce the portion of the decree regarding sale of the house until April, 2004, when appellee filed his motion to enforce the decree. In the motion, he alleged the City of Dallas had issued five citations against the property due to appellant's failure to maintain it as required by the decree. During the course of the proceedings, appellant expressed an interest in buying the home herself, and filed a motion to allow the receiver to sell the home to her. The parties attempted to close on appellant's purchase of appellee's interest in the home three times, but because of disagreements regarding the closing costs, these attempts were unsuccessful.

Appellee did not pay all of the child support provided for in the divorce decree. In his pleadings, appellee conceded the child support obligation did not cease until May, 1997, but he did not make any payments after September 1994. He moved out of town without notifying either the court or appellant. After filing the current action, he attempted to obtain the amount of the arrearage from the Dallas County Child Support Office. He received a letter in response noting a balance of $11,835.00, for a period ending September 30, 1996. In October, 2004, appellee wrote a check in the amount of $11,835.00 to appellant through the Child Support Office, and appellant cashed the check. In a notice of child support lien filed in September, 2005, however, appellant contended appellee still owed $13,910.61 in principal and $765.08 in interest after crediting the $11,835.00 and all other child support payments made. After an evidentiary hearing, the trial judge determined $3,000 was due in child support.

The record contains transcripts of twelve hearings held by the trial judge. Appellant complains of rulings made in the trial judge's orders of November 10, 2004, June 1, 2005, December 14, 2005, and February 23, 2006.

## DISCUSSION

In her first issue, appellant contends the trial judge erred in failing to enforce a written contract between the parties under which appellee was to sell his interest in the property to appellant. Appellant filed a "Motion to Allow Receiver to Sell Home to Susan Herzfeld." In it, she alleged that she desired to purchase appellee's interest in the home through the receiver at a price the receiver deemed fair. During a hearing on August 16, 2005, the trial judge granted appellant's motion, and asked the receiver if she had a contract ready to be signed. Appellee then signed, and appellant initialed, a contract entitled, "One to Four Family Residential Contract (Resale)," showing appellee as seller and appellant as buyer. The sale price shown in the contract was $175,000.00, and provided

the closing of the sale would occur on or before September 23, 2005.

Later testimony established appellant appeared at the closing with the funds to purchase the property in hand, but the agent for the title company refused to conduct the closing. Neither the receiver nor appellee appeared at the closing. Appellant then filed a motion for specific performance of the contract, which the trial judge denied. In her order of December 14, 2005, the trial judge ruled the contract appellant sought to enforce "is void and unenforceable." The trial judge's order reflects her conclusion that both appellant and appellee were required to be listed as sellers on the contract, rather than appellee only ("IT IS ORDERED that the prior Residential Sales Contract is void and unenforceable and that the parties will immediately execute a new Residential Sales Contract wherein both Mr. Herzfeld and Ms. Herzfeld are listed as the co-sellers. . . ."). Appellant quotes the trial judge as stating, "as a matter of law, it's the community property residence so they both have to be shown as the sellers because otherwise, to show Mr. Herzfeld as the seller wouldn't actually foreclose all the interest in the property."

The trial judge correctly stated that a homestead may not be conveyed without the joinder of both spouses. *See* TEX. FAM. CODE ANN. § 5.001 (Vernon 2006) ("Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except as provided in this chapter or by other rules of law."); TEX. CONST. art. XVI, § 50(b) (Vernon Supp. 2008) (owner or claimant of property claimed as homestead may not sell homestead without consent of each owner and spouse of each owner given in such manner as may be prescribed by law).

Appellant argues we must review this issue de novo and interpret the statute of frauds found in section 26.01 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon Supp.2008) (contract for sale of real estate not enforceable unless agreement in writing, signed by party to be charged with the promise or agreement). Appellant's argument on this issue is that appellee signed the contract as the "party to be charged," making the contract valid and enforceable as a matter of law. Assuming appellant is correct regarding the statute of frauds, *see Capital Bank v. Am. Eyewear, Inc.,* 597 S.W.2d 17, 19 (Tex.Civ.App.-Dallas 1980, no writ) (for purpose of Statute of Frauds, signature of "person to be charged" is act which authenticates document as reliable evidence of that person's agreement to transaction), appellant must still establish she is entitled to specific performance of the contract.

Among other things, to be entitled to specific enforcement of a contract, a party must show that the contract in question is valid and enforceable. *See Nguyen v. Woodley,* 273 S.W.3d 891, 898 (Tex.App.-Houston [14th Dist.] 2008, no pet. h.). In her order of December 14, 2005, the trial judge ruled the contract appellant sought to enforce "is void and unenforceable." Appellant's argument on this issue is that appellee signed the contract as the "party to be charged," making the contract valid and enforceable as a matter of law. She does not address the trial judge's conclusion the contract was void and unenforceable because both parties were not listed as sellers. Specific performance is an equitable remedy committed to the trial court's discretion. *Stafford v. S. Vanity Magazine, Inc.,* 231 S.W.3d 530, 535 (Tex.App.-Dallas 2007, pet. denied). A decree of specific performance is not a matter of right even to enforce terms of a contract,

but is "a matter of grace" in the discretion of the court. *Roundville Partners, L.L.C. v. Jones,* 118 S.W.3d 73, 79 (Tex.App.-Austin 2003, pet. denied). Appellant has not established the trial judge abused her discretion in denying specific performance of the contract. We overrule appellant's first issue.

In her second issue, appellant argues the trial judge erred by ruling that a child support lien could not attach without a court order that determined the amount of arrearage. We agree. Appellant relies on section 157.312(d) of the Family Code, which provides:

> A child support lien arises by operation of law against real and personal property of an obligor for all amounts of child support due and owing, including any accrued interest, *regardless of whether the amounts have been adjudicated or otherwise determined,* subject to the requirements of this subsection for perfection of the lien.

Tex. Fam.Code Ann. § 157.312(d) (Vernon 2008) (emphasis supplied).

Section 157.312(d) expressly provides a lien may arise "regardless of whether the amounts have been adjudicated or otherwise determined" as long as the requirements for perfection of the lien have been met. "The requirements of this subsection for perfection of the lien" are found in section 157.316(a), which provides in relevant part, "a child support lien is perfected when an abstract of judgment for past due child support or a child support lien notice is filed or delivered as provided by section 157.314." Tex. Fam.Code Ann. § 157.316(a) (Vernon 2008) (entitled "Perfection of Child Support Lien").

■ Section 157.314, in turn, contains provisions for filing child support lien notices and providing a copy of the notice to the obligor. *See generally* Tex. Fam.Code Ann. § 157.314 (Vernon 2008) (entitled "Filing Lien Notice or Abstract of Judgment; Notice to Obligor"). The requirements for a child support lien notice are set forth in section 157.313. *See* Tex. Fam. Code Ann. § 157.313 (Vernon 2008) (entitled "Contents of Child Support Lien Notice"). Section 157.313(a)(5) provides the child support lien notice "must" contain "the amount of child support arrearages owed by the obligor and the date of the signing of the court order, administrative order, or writ that determined the arrearages *or the date and manner in which the arrearages were determined.*" (Emphasis supplied). The italicized language was added by the legislature in 1997. *See* Act of May 15, 1997, 75th Leg., R.S., ch. 420, § 3, 1997 Tex. Gen. Laws 1661, and Act of May 21, 1997, 75th Leg., R.S., ch. 911, § 21, 1997 Tex. Gen. Laws 2869 (amending Tex. Fam.Code Ann. § 157.313(a)). Thus, the statute previously required citation to a "court order, administrative order, or writ that determined the arrearages." The new language was added at the same time section 157.312(d) was added to provide that a child support lien arises by operation of law "regardless of whether the amounts have been adjudicated or otherwise determined." *See* Act of May 15, 1997, 75th Leg., R.S., ch. 420 § 2, 1997 Tex. Gen. Laws 1660, and Act of May 21, 1997, 75th Leg., R.S., ch. 911, § 20, 1997 Tex. Gen. Laws 2868. The plain language of these sections indicates a lien arises without action by a court, as long as the notice complies with the statutory requirements. The amended language applies to a lien notice filed after the effective date of the act. *See* Act of May 15, 1997, 75th Leg., R.S., ch. 420, § 31, 1997 Tex. Gen. Laws 1668, and Act of May 21, 1997, 75th Leg., R.S., ch. 911, § 98, 1997 Tex. Gen. Laws 2893.

■ The clerk's record contains a "Notice of Child Support Lien" filed by appel-

lant on September 22, 2005, alleging a total arrearage of $14,675.69. The notice includes a statement regarding the date and manner in which the arrearages were determined:

Child support arrearage ... was determined on September 22, 2005 by reviewing the above described decree, the official child support record of payments in this case, dated July 19, 2004, applying Texas Family Code § 157.265 and its predecessors for the purpose of determining statutory interest and accounting for and deducting a lump sum payment of $11,835.00 on October 4, 2004.

In her order of December 14, 2005, the trial judge ordered appellant's counsel to

immediately send proper notice releasing the Child Support Lien to each party that received Notice of the Child Support Lien because it was filed improperly as no child support arrearages have ever been confirmed by this Court; and therefore neither the Child Support Lien nor any amount for child support will be included in the settlement statement, nor will any money for alleged child support due be withheld from Mr. Herzfeld's portion of the proceeds ...

Appellant's counsel promptly filed a release of the lien.

 We conclude the trial judge erred in her determination that the child support lien was improperly filed. We next determine whether the error probably caused rendition of an improper judgment. *See* Tex.R.App. P. 44.1. After the trial judge ordered release of the lien, appellee filed a "Motion To Confirm That There is Not Past Due Child Support or Arrearages." An evidentiary hearing was held on this motion; the trial judge determined that a balance of $3,000 in child support was due by appellee; and the trial judge ordered appellee to pay the amount due. Thus, we conclude the trial court's error did not cause rendition of an improper judgment, and we overrule appellant's second issue.

In her third issue, appellant contends the trial judge erred by failing to award statutory pre-judgment interest on past due child support awarded in a divorce decree after an adversarial trial. The trial judge's order dated February 23, 2006, provides in relevant part:

IT IS ORDERED that the total Child Support balance is confirmed at $3,000. Mr. Herzfeld is Ordered to pay that sum to Ms. Herzfeld through the Dallas County Child Support Office.

IT IS FURTHER ORDERED that this $3,000, represents the entire amount of child support due by Mr. Herzfeld. Considering all the relevant circumstances in this particular case, as well as controlling law ... [text stricken]; no Interest rate set either in the final decree or subsequently by this Court since the final decree, this Court has found that there is no interest due or owing on any past or presently due child support.

Section 157.265 of the Family Code provides for interest on past due child support. Subsection (e) provides for the accrual of interest on child support arrearages "in existence on January 1, 2002, that were not confirmed and reduced to a money judgment on or before that date." *See also In re M.C.C.*, 187 S.W.3d 383, 385 (Tex.2006) (per curiam) (§ 157.265 applies prospectively; under statute, any unpaid child support payments not judicially confirmed include twelve percent interest accrued through December 31, 2001; beginning January 1, 2002, unpaid child support not judicially confirmed, including twelve percent interest already included in debt, will start accruing any new inter-

est at rate of six percent).[1]

■ Appellee concedes there were arrearages beginning in 1994 when he failed to make the payments ordered by the decree and the obligation did not cease until 1997. He did not make any further payments until 2004. Although the trial judge noted the divorce decree was silent regarding interest, appellant argues the decree was entered after a trial and was not her agreement that no interest would accrue on past due child support. *See, e.g., In re D.C.*, 180 S.W.3d 647, 649 (Tex.App.-Waco 2005, no pet.) (collecting cases on whether agreement as to form of judgment constitutes non-appealable consent judgment).

Section 157.261 of the Family Code provides "a child support payment not timely made constitutes a final judgment for the amount due and owing, *including interest* as provided in this chapter." TEX. FAM. CODE ANN. § 157.261(a) (Vernon 2008) (emphasis added).[2] The trial court does not have the discretion to increase or reduce the arrearage or the interest. *In re M.C.R.*, 55 S.W.3d 104, 108–09 (Tex.App.-San Antonio 2001, no pet.) (citing TEX. FAM.CODE ANN. § 157.262, which provides in subsection (a), "Except as provided by this section, in a contempt proceeding or in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages.").[3] The court in

*In re M.C.R.* concluded, "[a]ccrued interest is clearly part of the child support obligation which is to be reduced to a money judgment." 55 S.W.3d at 109 (citing TEX. FAM.CODE ANN. § 157.267,[4] which provides, "[a]ccrued interest is part of the child support obligation and may be enforced by any means provided for the collection of child support.").

We conclude the trial judge erred by failing to award interest in her order confirming the child support arrearage. We sustain appellant's third issue.

■ In her fourth issue, appellant contends the trial judge erred by ruling that appellant's appeal from the associate judge's appointment of a receiver was waived for failure to have it heard in thirty days. On September 24, 2004, appellee moved for appointment of a receiver. The motion recited the terms of the divorce decree regarding sale of the property, and alleged, "Movant and Respondent cannot agree on the terms of sale for the property described in this Motion. Unless a receiver is appointed to immediately take charge and control of the property, there is danger that the community estate will suffer additional irreparable loss." On November 10, 2004, the trial judge signed an order appointing a receiver. The order recited that a hearing had been held on November 1, 2004, and provided:

1. Prior to 1995, the substance of section 157.265 could be found in section 14.34 of the Family Code. *See, e.g.,* Act of May 25, 1991, 72nd Leg., R.S., ch. 467, § 1, 1991 Tex. Gen. Laws 1693, and Act of May 6, 1993, 73rd Leg., R.S., ch. 150, § 1, 1993 Tex. Gen. Laws 302.

2. Prior to 1995, the substance of section 157.261 could be found in section 14.41(a) of the Family Code. *See, e.g.,* Act of May 25, 1991, 72nd Leg., R.S., ch. 467, § 2, 1991 Tex. Gen. Laws 1693.

3. Prior to 1995, the substance of section 157.262 could be found in section 14.41(d) of the Family Code. *See, e.g.,* Act of May 27, 1985, 69th Leg., ch. 232, § 9, 1985 Tex. Gen. Laws 1163.

4. Prior to 1995, the substance of section 157.267 could be found in section 14.34 of the Family Code. *See, e.g.,* Act of May 23, 1991, 72nd Leg., R.S., ch. 467, § 1, 1991 Tex. Gen. Laws 1693, and Act of May 6, 1993, 73rd Leg., R.S., ch. 150, § 1, 1993 Tex. Gen. Laws 302.

The Court finds that Gayle Strange, a licensed agent of Ebby Halliday Realtors located at 7601 Campbell Road, Dallas, TX 75248, is qualified to serve as Receiver.

IT IS THEREFORE ORDERED that Gayle Strange, a licensed agent of Ebby Halliday, is appointed Receiver to take charge and possession of the real property located at 7202 Rustic Valley Drive, Dallas Texas 75248 ...

IT IS FURTHER ORDERED that ... Gayle Strange, is authorized to manage, control, and dispose of the property as she sees fit subject to the approval of this Court.

IT IS FURTHER ORDERED that the parties fully cooperate with the Receiver, including without limitation, signing any real estate listing agreement, showing property to prospective buyers and vacating the premises, if necessary in the opinion of Receiver.

There is no reporter's record of a hearing on November 1, 2004, and the order quoted is signed by Judge Lewis, not by an associate judge. There is no motion to appeal this ruling in the clerk's record. Nonetheless, the reporter's record contains a transcript of a hearing held on February 3, 2005, on "Motion to Appeal Appointment of Receiver," in which counsel for the parties and Judge Lewis appear to be in agreement that a hearing was held before an associate judge on November 1, 2004; an associate judge appointed a receiver on that date; and appellant timely filed an appeal of that appointment. The trial judge asked, "The appeal was timely filed why have we waited so late to hear it, 30 days has run." Counsel for appellant explained he had a conflict with another trial setting on the date the motion was originally set for hearing, and requested the setting be changed. The new hearing date set was after the expiration of the 30-day period. Appellee's counsel then objected to going forward with the hearing because the 30–day period had elapsed. The trial judge sustained the objection, noting, "There is case law out there that supports the proposition that an Associate Judge's ruling if appealed should be heard within 30 days....You timely filed your appeal there's [sic] hasn't been heard.... I don't believe we can go forward, it should have been heard within 30 days.... If there's an objection being made to going forward, I would have to sustain the objection."

Section 201.015 of the Family Code does require the trial court to hold a hearing on an appeal from an associate judge's ruling within thirty days. *See* TEX. FAM.CODE ANN. § 201.015 (Vernon 2008). At the time of appellant's appeal of the associate judge's ruling, section 210.015 provided as follows:

§ 201.015. Appeal to Referring Court

(a) A party may appeal an associate judge's report by filing notice of appeal not later than the third day after the date the party receives notice of the substance of the associate judge's report as provided by Section 201.011....

(f) The referring court, after notice to the parties, shall hold a hearing on all appeals not later than the 30th day after the date on which the initial appeal was filed with the referring court.

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 241 (amended by Act of May 23, 2007, 80th Leg., R.S., ch. 1043, § 1, 2007 Tex. Gen. Laws 3599, and Act of May 23, 2007, 80th Leg., R.S., ch. 1235, § 7, 2007 Tex. Gen. Laws 4152).

We have held, "the referring court does not lose its jurisdiction if it fails to hear an appeal within thirty days after the appeal is filed." *Fountain v. Knebel*, 45 S.W.3d

736, 739 (Tex.App.-Dallas 2001, no pet.). In *Fountain,* we noted,

> [T]he thirty-day provision affords a party the right to compel the district court to hear the case promptly. The requirement is a deadline for the trial court, not the parties. Once a party has filed a notice of appeal, the party has completed the prerequisites necessary to be entitled to a de novo hearing.

*Id.* at 739 (citations omitted). We concluded, "[i]n the present case, it is undisputed that Fountain timely appealed from the associate judge's report. Therefore, Fountain was entitled to de novo review by the district court." *Id.* We further reasoned, "Although the family code does not set a deadline for the referring court to *resolve* the appeal, it does set a deadline for conducting a hearing; and the statutory scheme clearly contemplates a prompt resolution of the appeal." *Id.* at 740 (emphasis original). Under *Fountain,* the trial judge here erred in refusing to review the associate judge's decision. Appellee responds, "This statute [Texas Family Code section 201.015(f) ] has been further defined by the Texas Supreme Court in *In the Interest of T.S., E.S.* SW 3 (2006)." The only case we have found by that caption is an opinion of the Fourteenth Court of Appeals in which the court concluded the trial judge erred by refusing to entertain an appeal of an associate judge's ruling. *See In re T.S.,* 191 S.W.3d 736, 740 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

■ We next consider whether the error was harmful. *See* Tex.R.App. P. 44.1 (no judgment may be reversed on appeal on ground that trial court made error of law unless court of appeals concludes error probably caused rendition of improper judgment or prevented appellant from properly presenting case to court of appeals). In *Fountain,* we determined the trial court's failure to rule on the appeal from the associate judge's report was harmful, and we reversed the trial court's judgment and remanded the cause. *Fountain,* 45 S.W.3d at 740. Appellant alleges the error was harmful because the receiver appointed had no experience as a receiver, did not understand the transaction she was to undertake, prepared erroneous documents, improperly joined motions filed by appellee in the trial court, and caused or contributed to delay in resolving the parties' dispute. We do not agree that the trial judge's error probably caused rendition of an improper judgment. First, the divorce decree explicitly provided, "Should Petitioner and Respondent be unable to agree on a sales price or a listing agreement, then upon the application of either party to this suit, the property shall be sold under such terms and conditions as determined by a court-appointed receiver." Therefore, the appointment of a receiver was required by the divorce decree upon either party's application. Second, although appellant urges the appointment of this particular receiver was error, the trial judge had ample opportunity to review the receiver's qualifications and actions in the course of the proceedings. In the course of a dozen hearings in the case, the trial judge heard the receiver testify as to her qualifications and experience and the actions she took in fulfilling her duties, ordered the parties to cooperate with the receiver, on occasion gave the receiver specific instructions to be followed, and entertained appellant's objections to actions taken by the receiver. We conclude the trial judge's failure to hear appellant's appeal of the associate judge's appointment of the receiver did not cause the rendition of an improper judgment. We overrule appellant's fourth issue.

■ In her fifth issue, appellant complains as follows:

ISSUE FIVE: The Trial Court stated on the record that it had found Mrs. Herzfeld in contempt but did not sign a written order stating that finding and did not make clear what order Mrs. Herzfeld was in contempt for violating. If this action was a finding of contempt, was it supported by the language of the violated order and legally and factually sufficient evidence?

In her discussion of the issue, appellant states, "The court never signed an order containing a finding of contempt." She argues that if the contempt holding was for failure to maintain the house in its present condition as required by the divorce decree, there was no evidence and there were no findings regarding the condition of the house either at the time of the decree or at the time of the finding of contempt. She notes appellee filed numerous motions for contempt that were not properly served and often complained of her counsel's legitimate attempts to preserve error. She requests the following relief:

Appellant asks this Court to find that she is not in contempt of court, to reverse any order of contempt that may have been made by the trial court, and to order the trial court to cease holding hearings on motions for contempt until such time as a proper motion for contempt citing legal authority for punishment by contempt has been filed and personally served on Susan.

 We first note that a court of appeals lacks jurisdiction to review a contempt order on direct appeal. *See Tracy v. Tracy,* 219 S.W.3d 527, 530 (Tex.App.-Dallas 2007, no pet.), and cases cited therein. Contempt orders involving confinement may be reviewed by writ of habeas corpus; contempt orders that do not involve confinement may be reviewed only through mandamus. *Id.* Thus, to the ex-

tent appellant requests review of a specific contempt order, we must overrule this issue.

We also note the record does contain a specific order containing findings regarding appellant's compliance with the divorce decree and with the order appointing the receiver. The trial judge's order of June 1, 2005, provides in part:

On May 16, 2005, this Court held a penalty hearing following Movant's Motion to Enforce the Final Decree of Divorce and Movant's Motion for Contempt for failing to comply with the Order appointing a Receiver, both of which were heard and ruled on by this court on prior settings. The Court, after reviewing all pleadings, evidence, arguments of counsel, testimony of the parties and by the appointed Receiver, hereby GRANTS Movant's Motions to the extent contained herein; and finds that the Respondent failed to comply with her obligations under the Final Decree, specifically, by failing to make "all maintenance and repairs necessary to keep the property in its present condition"; and by failing to fully cooperate with Receiver as ordered in the Order on Motion to Appoint Receiver . . .

The trial judge then made several specific orders, including granting the receiver immediate access to the property, ordering appellant to vacate and surrender control of the property to the receiver by a date certain, ordering appellant bear the costs of cleaning and repairing the property as determined by the receiver, and ordering the parties to fully cooperate with the receiver.

At a previous hearing, the trial judge heard testimony from the receiver that she had been unable to view the interior of the property despite attempts to do so, and it was necessary for the receiver to view the interior in order to evaluate the property

for sale. The trial judge then directed the parties to cooperate with the receiver and allow her access to the home. At the hearing on May 16, the receiver testified she had been granted access to the home and found it in "total disarray." She testified the house was not marketable in its present condition and needed professional cleaning and repair.

■ The trial judge's order of June 1 was specifically tailored to achieve the goal of obtaining access to the home by the receiver to prepare for sale of the home as required by the divorce decree. To the extent we have jurisdiction to review this order as a discovery sanction rather than as an order of contempt, we conclude the trial judge did not abuse her discretion. *See, e.g., Occidental Chem. Corp. v. Banales,* 907 S.W.2d 488, 490 (Tex.1995) (sanction must be no more severe than necessary to satisfy legitimate purpose of discovery process offended). We overrule appellant's fifth issue.

CONCLUSION

We overrule appellant's first, second, fourth, and fifth issues. We sustain appellant's third issue. We reverse the trial judge's order that no interest accrued on the child support arrearages confirmed by the trial court. We remand the cause to the trial court for consideration of the amount of interest to be included in the judgment.