REVERSE and REMAND in part, AFFIRM in part; Opinion issued December 6, 2012



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-10-01298-CV

**SUSAN EDIS HERZFELD, Appellant**

V.

**RONALD MICHAEL HERZFELD, Appellee**

On Appeal from the 330th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 89-232-Y

# MEMORANDUM OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Francis

Susan Edis Herzfeld appeals the trial court order regarding her post-divorce motion for enforcement. In five issues, Susan contends the trial court erred in (1) refusing to award statutory prejudgment interest on a child support arrearage, (2) denying her requests for unreimbursed health insurance and payments to a psychologist, (3) denying prejudgment interest on unreimbursed amounts paid to Pediatric Associates, and (4) awarding her attorney less than ten percent of the fees incurred. We sustain Susan's issues related to prejudgment interest on the child support arrearage and unreimbursed medical payments. We reverse the trial court's order and remand for the trial court to recalculate prejudgment interest on those obligations and, in light of our disposition, to reconsider the amount of attorney's fees.

This is the second appeal in a long and contentious history between the parties. Briefly, Susan and Ronald Herzfeld divorced in December 1991. The divorce decree required Ronald to pay $500 per month in child support, the cost of the children's health insurance, and half of the children's uninsured medical expenses, until their two children turned eighteen or graduated from high school, whichever was later. (Both children are now adults; the youngest graduated from high school in May 1997.) Susan was required to provide Ronald with copies of the insurance policies and schedule of payments as well as copies of statements and bills for health care expenses not covered by insurance. The decree also provided that Susan would have exclusive possession of the parties' residence, which would be sold at the end of Ronald's child support obligations. Under the decree, each party was required to keep the other fully and promptly informed of his or her current address.

After the divorce, Ronald stopped making the required child support payments and moved out of town without notifying Susan of his address change. Then, in 2004, he reappeared and filed a motion to enforce the portion of the decree regarding the sale of the house. After filing the motion, Ronald contacted the Dallas County Child Support Office to obtain the amount of his child support arrearage and was told it was $11,835 for the period ending September 30, 1996, which was the month his youngest child turned eighteen. The child support office did not include any amounts owed for the months until the youngest child graduated from high school, nor did it include statutory prejudgment interest. In October 2004, Ronald paid Susan $11,835. At a hearing in February 2006, the trial court acknowledged Ronald's obligation to pay child support until the youngest graduated from high school, calculated his additional arrearage at $3000, and ruled that no interest accrued on any unpaid or late-paid child support. Ronald tendered a check to Susan for $3000, which she did not cash.

Susan then appealed for the first time to this Court. One of her issues challenged the trial

court's determination that she was not entitled to prejudgment interest on past due child support. *See Herzfeld v. Herzfeld*, 285 S.W.3d 122, 128 (Tex. App.—Dallas 2009, no pet.). In our prior opinion, we noted that Ronald conceded there were arrearages beginning in 1994 when he failed to make the payments ordered by the decree and that his obligation did not cease until 1997. We also noted that Ronald did not make any further payments until 2004. After setting out various provisions of the family code regarding child support, we explained a trial court does not have discretion to increase or reduce the amount of arrearage or interest. *Id.* at 129. We reversed the trial court's order and remanded the cause to the trial court for consideration of the amount of interest to be included in the judgment. *Id.* at 133.

Back in the trial court, Susan amended her previously unheard motion for enforcement of child support and sought a cumulative money judgment for all unpaid child support not previously confirmed, the balance owed on previously-confirmed arrearages, interest on all arrearages, all unreimbursed medical insurance premiums and uninsured medical expenses with interest, and attorney's fees.

The trial court conducted an evidentiary hearing on Susan's motion. Susan presented evidence of child support, insurance payments, and medical expenses that Ronald failed to pay. Ronald acknowledged he did not timely pay child support and made lump sum payments of $11,835 and $3000 years after the money was due. He also claimed he did not receive medical or insurance bills from Susan but admitted he did not provide her with his address as required under the divorce decree.

After hearing all the evidence, the trial court refused to assess interest on the $11,835 lump sum payment made in 2004 and assessed interest on the $3,000 payment beginning on November 1, 2004 and ending on February 23, 2006; denied Susan's request for reimbursement of medical insurance premiums and payments to the children's psychologist; awarded Susan $622 in

reimbursement on payments to the children's pediatrician but denied prejudgment interest; and awarded $15,000 in attorney's fees to two different attorneys who have represented Susan in these matters. This appeal ensued.

Most appealable issues in a family law case, including a trial court's order granting or denying the relief requested in a motion for enforcement, are evaluated for an abuse of discretion. *In re A.C.B.*, 302 S.W.3d 560, 563 (Tex. App.—Amarillo 2009, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). A trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A trial court's findings are reviewable for legal and factual sufficiency of the evidence supporting them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). However, in family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; as a result, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Id.* To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.*

In her first issue, Susan contends the trial court abused its discretion in refusing to award

statutory prejudgment interest on the undisputed child support arrearage. In particular, she complains the trial court refused to award any prejudgment interest on the $11,835 paid in 2004, years after it was due. With respect to the $3,000 lump sum payment made in November 2006, she complains the trial court erred in calculating prejudgment interest from November 2004 instead of the dates the payments were due.

Section 157.265 of the Texas Family Code provides that interest accrues on past due child support. *See* TEX. FAM. CODE ANN. § 157.265 (West 2008); *Herzfeld*, 285 S.W.3d at 128. Subsection (e) provides for the accrual of interest on child support arrearages "in existence on January 1, 2002, that were not confirmed and reduced to a money judgment on or before that date." TEX. FAM. CODE ANN. § 157.265(e). Section 157.265 applies prospectively, and unpaid child support obligations that were not confirmed and reduced to judgment as of January 1, 2002 accrued interest at a rate of twelve percent through December 31, 2001; beginning January 1, 2002, unpaid child support that is not judicially confirmed, including the twelve percent already included in the debt, accrues new interest at the rate of six percent. *See In re M.C.C.*, 187 S.W.3d 383, 385 (Tex. 2006) (per curiam).

Accrued interest becomes part of the child support obligation. TEX. FAM. CODE ANN. § 157.267 (West 2008). A trial court has no discretion to modify, forgive, or make equitable adjustments in awarding interest on child support arrearages. *In re A.C.B.*, 302 S.W.3d at 566; *see Herzfeld*, 285 S.W.3d at 129. In determining the amount of accrued interest, the trial court acts as "a mere scrivener" and has no discretion to deviate from the family code's dictates. *In re M.C.R.*, 55 S.W.3d 104, 109 (Tex. App.—San Antonio 2001, no pet.).

The undisputed evidence showed Ronald did not pay his child support obligations as ordered and an arrearage began to accumulate in 1994. When he sought a payoff amount in 2004 from the

child support office, the office provided an amount ($11,835) that accounted for his unpaid semi-monthly child support obligations through September 1996 but failed to account for the eight months until the youngest child graduated from high school (October 1996 through May 1997), as provided for in the divorce decree. In addition, the amount did not include prejudgment interest. In November 2006, the trial court acknowledged the child support office's calculation error and confirmed an additional arrearage of $3000.[1]

Susan presented expert testimony regarding the amount of interest that had accumulated over the years. Lynn Davis Ward, a lawyer who is also a certified public accountant, said she reviewed the divorce decree and the printout from the child support office showing Ronald's payments. She then used a computer program, ProDoc, that follows the Texas Family Code and has a built-in child support calculator and delinquent child support calculator, to determine the amount owed. The program starts interest on the thirty-first day after a child support payment was due and incorporates the statutory changes in interest in its calculations. Further, Ward testified the program applies the payments in accordance with the applicable statute, which in this case meant that it applied the payments first to accrued interest.[2] After applying all of Ronald's monthly payments as well as the two lump sum payments made, Ward showed that as of April 22, 2010, Ronald owed $20,597.26. She said she could update that amount within seconds to calculate an amount in the future, if needed.

In its order, the trial court made the following rulings regarding interest on late-paid child

---

[1] We note the trial court miscalculated the correct amount owed for the eight months by $1000, but it was not challenged in the previous appeal. Consequently, we will not address the correctness of the amount in this appeal. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (defining law of the case doctrine and explaining its aim at "putting an end to litigation").

[2] Payments made before January 1, 2010, which were all the payments made in this case, were to be applied in the following order: (1) current child support; (2) non-delinquent child support; (3) interest on unconfirmed and confirmed obligations; (4) principal amount of unconfirmed obligations; (5) principal amount of confirmed obligations; and (6) attorney's fees or costs, or Title IV-D service fees authorized under section 231.103 for which the obligor is responsible. Act of May 21, 2009, 81st Leg., R.S., ch. 767 § 18 Tex. Gen. Laws 1938, 1944 (current version at TEX. FAM. CODE ANN. § 157.268 (West Supp. 2012)).

support:

> 1. The Court finds that Mr. Herzfeld does have an interest arrearage and a medical support arrearage. With respect to the interest owed by Mr. Herzfeld, the Court finds he relied upon the information provided to him by the Dallas County Child Support Office when he paid what he believed to be the entire arrearage on October 4, 2004, in the amount of $11,835, the Court assesses no interest on that portion.

> 2. The Court found on February 23, 2006, that Mr. Herzfeld owed an additional $3,000 in unpaid support, due to the months between his youngest child's eighteenth birthday and her graduation from high school. The Court finds that Mr. Herzfeld tendered a check in the amount of $3,000 through the Dallas County Child Support Office on February 23, 2006, but that Susan Herzfeld did not cash the check. The Court, therefore, orders Mr. Herzfeld to exchange a currently-dated check for $3,000 made out to Susan Herzfeld for the original of the February 23, 2006 check. The Court further finds that interest should be calculated on that $3,000 arrearage, beginning on November 1, 2004, and ending on February 23, 2006, at the rate of 6% interest, the total of which is $253.73, for which the Court renders judgment against Ronald Michael Herzfeld in favor of Susan Herzfeld.

It is clear from both of these rulings that the trial court based its decisions to (1) assess no prejudgment interest on the $11,835 paid by Ronald in October 2004 and (2) calculate prejudgment interest on the $3000 arrearage beginning on November 1, 2004 because it believed Ronald was entitled to rely on the payoff amount provided by the Dallas County Child Support Office. But the evidence establishes the child support office did not include any prejudgment interest in the calculation provided to Ronald. Accrued interest is part of the child support obligation, and as this Court previously instructed in this very case, a trial court has no discretion to reduce the amount of interest.

In reaching this conclusion, we reject any argument by Ronald that he should benefit from any miscalculation by the child support office or that the trial judge should have discretion in such a circumstance about whether to assess interest. As set out previously, the law is clear on this point.

Moreover, Ronald misperceives his obligation as a parent. The function of child support is to help a custodial parent maintain an adequate standard of living for the child. *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991). When child support payments are not made, the result is a loss of funds available for the child's food, clothing, education, and home environment. *Id.* It is a strong, long-standing policy of this state to protect the interests of its children, and this is the policy underlying the enforcement of child support obligations. *Id.*

The trial court here had no discretion to excuse Ronald from paying interest on child support that he paid years late because he relied on a child support office printout that showed only the amounts of semi-monthly support due and payments made over the years. Nor did the trial court have discretion to forgive interest on the $3000 lump sum before October 2004. Because the trial court abused its discretion by ruling to the contrary, we sustain Susan's first issue. *See Walker*, 827 S.W.2d at 840.

In her second issue, Susan contends the trial court abused its discretion by denying her reimbursement for health insurance premiums for the children. The divorce decree required Susan to obtain health insurance for the children and furnish Ronald a copy of the policy or certificate, the schedule of payments due, the schedule of benefits, and any renewals or changes of that policy within fifteen days. Ronald was ordered to pay Susan the amount of the premiums five days before they were due.

At the hearing, Susan testified she first obtained health insurance for the children from Golden Rule Insurance Company and then later from Time Fortis Insurance Company. She testified the policies also covered her, explaining that she tried to obtain insurance on just the children but said there "had to be a parent on the policy." According to Susan, she sent copies of the polices and schedules of benefits to Ronald at the only address she had, that is, the one provided in the decree.

At some point, the mail she sent to him was returned by the post office so she forwarded the documents to Ronald's attorney. Susan said Ronald never reimbursed her for any health insurance payments.

To support her testimony with regard to the Golden Rule premiums, Susan presented a document from the company showing the amount of premiums paid by her to Golden Rule. The document listed the amount of each monthly premium paid to Golden Rule for the two children and Susan from October 1989 to June 1995 for a total of $14,192.34 before interest. As for Time Fortis, Susan did not have documentary proof from the company. Instead, she testified the premium started at $219.33 per month and increased to $244.18 more than a year later. She produced a cancelled check for the $219.33 premium and four bank statements showing automatic deductions from her checking account to Time Insurance Company in the amounts of $217.42 in November/December 1995 and December/January 1996 and $244.18 in September/October 1996 and February/March 1997. In addition, she presented a July 9, 1996 letter from Time Insurance Company stating the amount of the premium was $244.18; Susan G. Herzfeld is listed as the insured. Through her expert, she also presented a calculation of the total amount owed.

During cross-examination, Susan was asked "how much [of the premium] was for you and how much was for the children," and she responded that the policy was "whatever the premiums" were. She then acknowledged there was no way of knowing how much of the premium was for herself and how much was for the children. She was also asked if she saved copies of the correspondence that she sent to Ronald, and she said she "was not a business office" and "did not make copies." She also testified she did not have any of the returned mail. When asked about proof that she sent the documents to Ronald's attorney, she said "[t]he attorney would have proof." She said she did not contact the attorney before the hearing.

In its order, the trial court denied reimbursement because of "insufficient evidence of the notice given to Mr. Herzfeld to satisfy contempt and insufficient evidence to establish an accurate amount for judgment." Either basis, if supported by the record, would be sufficient to sustain the trial court's decision. We begin with evidence of the amount of the premiums.

While evidence was presented the costs of the policies and expert testimony calculating those totals with interest, Susan testified the policies did not just cover the children, they also covered her. Ronald was not required under the decree to pay for Susan's health insurance. Although Susan's expert testified she could recalculate the amount owed by using only two-thirds of the total amount of premiums paid, which would presumably attribute one-third of the policy's cost to Susan, there was no evidence presented to calculate how much of the premium cost was for Susan, such as the cost of a policy for her alone. Given the absence of any evidence to show the cost of premiums for the children alone, we cannot say the trial court abused its discretion in concluding the evidence failed to establish an accurate amount. We overrule the second issue.

In her third issue, Susan contends the trial court abused its discretion in finding no evidence to support an award for reimbursement of her payments to the children's psychologist, Dr. Terry Moody.

Laurence Scott, the Herzfelds' son, testified he was fourteen years old when his parents separated. His father filed for divorce shortly thereafter, and the trial court ordered Scott to see Dr. Terry Moody. Scott identified a December 5, 1989 check to Dr. Moody, written out by Scott and signed by his mother. The amount of the check was $100. Scott explained his mother gave him the check to pay Dr. Moody after Dr. Moody started "bugging him" about needing to be paid. Scott did not think his father was paying Dr. Moody's bills.

Susan testified each child saw Dr. Moody an average of twice a month and she paid Dr.

−10−

Moody from $200 to $800 per month. Susan stated that pre-decree, Ronald was ordered to pay 100 percent of the psychologist's bill and post-decree he was to pay fifty percent. At the hearing, she sought reimbursement of $200 a month pre-divorce and $100 per month post-divorce. When asked if she had proof that the children visited Dr. Moody other than the one check she submitted showing she paid $100, the record shows she pointed to her children, who apparently were in the courtroom. She acknowledged she did not have documentary proof of bills from Dr. Moody.

Susan's expert, Lynn Ward, calculated an amount owed for Dr. Moody, assuming the visits began in 1989 and continued until July 1992 for Scott and September 1996 for Rachel (the parties' youngest child), the dates the children turned eighteen. She calculated a base amount owed of $12,900 plus $20,023.23 in interest as of April 22, 2010, totaling $32,923.23.

Ronald testified he received bills from Dr. Moody and paid them. He testified he did not receive any bills from Susan but admitted he failed to comply with the divorce decree's provision that he keep Susan informed of any change of address.

In its order, the trial court denied Susan's request for reimbursement because there was no evidence Susan timely notified Ronald of the payments made and no evidence of the dates on which they were made. Further, the trial court found the evidence as to an actual amount was "speculative" because there were no records of visits by date or by child.

Here, while there was evidence from Susan that the children saw Dr. Moody, there was no evidence as to the number of appointments nor was there any definitive testimony regarding the amount owed to Dr. Moody. Susan testified from memory that both of the children saw Dr. Moody an average of twice a month, presumably every month from the time of the separation until they turned eighteen, but said she sought only $200 per month pre-divorce and $100 a month post-divorce. Given the absence of any other proof to corroborate Susan's testimony regarding the number of

children's visits, when they occurred, or the cost of each visit, we cannot say the trial court abused its discretion in concluding the amount was speculative. We overrule the third issue.

In her fourth issue, Susan contends the trial court erred in denying prejudgment interest on reimbursement of her payments to Pediatric Associates. Susan sought to recover half of the uninsured amounts she paid to the children's pediatrician with interest. She presented a document from Pediatric Associates showing services for Laurence and Rachel from April 1989 to May 1996, totaling $1,350. Again, she testified she sent Ronald copies of the bills but he did not reimburse her.

The trial court awarded Susan $622 in medical arrearages,[3] but denied any prejudgment interest. Instead, it ordered interest to accrue from the date of the April 22, 2010 hearing at which demand was made at the current statutory rate of 5 percent until paid. In its order, the trial court based this ruling on the lack of timely notice to Ronald. Specifically, the trial court found Susan "testified she was aware that [Ronald] was not getting the bills, and she did not send each and every one to him[.]"

The only evidence in the record to support the trial court's findings is Susan's testimony that, at some point, she was aware the bills she sent to Ronald were returned due to a wrong address. As stated previously, the divorce decree required Susan to send copies of the medical bills to Ronald, but the decree also provided that Ronald notify Susan of any change of address. Susan told the court that the only address she had for Ronald was the one she had at the time of the divorce. Ronald testified that he did not provide Susan with his change of address. Given that the divorce decree provided that Ronald was to inform Susan of a change of address and Ronald's testimony at trial that he failed to comply with this provision, we conclude it was unreasonable for the trial court to penalize Susan for

---

[3] We recognize that the amount awarded is less than 50 percent of the bill presented as evidence. The record does not indicate how the trial court arrived at the figure, nor is there any complaint about the principal amount awarded.

failing to provide Ronald timely notice. Accordingly, we conclude the trial court abused its discretion in assessing interest from the date of the hearing and denying prejudgment interest. We sustain the fourth issue.

In her fifth issue, Susan contends the trial court erred in awarding her less than 10 percent of the attorney's fees she incurred. The trial court awarded attorney's fees, totaling $15,000, to two different attorneys. The only award at issue in this appeal is the $11,000 awarded to Julia F. Pendery.

Section 157.167(a) of the family code provides that "[i]f the court finds that the respondent has failed to make child support payments, the court shall order the respondent to pay the movant's reasonable attorney's fees and all costs in addition to the arrearages." TEX. FAM. CODE ANN. § 157.167(a) (West 2008). There are several factors a trial court should consider in determining the amount of reasonable attorney's fees to award. *In re A.B.P.*, 291 S.W.3d at 98. These factors include: the time, labor, and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and results obtained; the nature and length of the professional relationship with the client; and the experience, reputation, and ability of the lawyer performing the services. *Id.*

The record before us contains extensive evidence regarding the work put into this case for the past several years as well as the other factors listed above. At the hearing, Ronald argued that the time spent was redundant and unnecessary, particularly as it related to prejudgment interest on child support. But given our disposition of the issues in this case, we conclude it is necessary to allow the trial court to reconsider the attorney's fees in this case. We therefore sustain the fifth issue.

We reverse the trial court's order and remand for the trial court to calculate the amount of prejudgment interest owing on all late paid child support and the $622 in medical expenses and to

–13–

reconsider the award of attorney's fees. We affirm the order in all other respects.

_____
MOLLY FRANCIS
JUSTICE

101298F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SUSAN EDIS HERZFELD, Appellant

No. 05-10-01298-CV     V.

RONALD MICHAEL HERZFELD,
Appellee

Appeal from the 330th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 89-232-Y).

Opinion delivered by Justice Francis, Justices Morris and Murphy participating.

     In accordance with this Court's opinion of this date, the trial court's order (1) denying prejudgment interest on the $11,835 arrearage, (2) calculating prejudgment interest on the $3000 arrearage beginning on November 1, 2004, and (3) awarding attorney's fees of $11,000 to Susan Herzfeld's attorney, Julia Pendery, is **REVERSED,** and this cause is **REMANDED** for the trial court to calculate the amount of prejudgment interest owing on all late paid child support and on the $622 in medical expenses and to reconsider the award of attorney's fees. We **AFFIRM** the trial court's order in all other respects. It is **ORDERED** that appellant Susan Edis Herzfeld recover her costs of this appeal from appellee Ronald Michael Herzfeld.

Judgment entered December 6, 2012.

MOLLY FRANCIS
JUSTICE