**REVERSED AND REMANDED and Opinion Filed January 7, 2022**



In the
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01589-CV**

**IN THE INTEREST OF E.W.M., A CHILD**

**Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-53699-2018**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

In this consolidated appeal and original proceeding, Marc Masefield challenges the trial court's order holding him in contempt and awarding attorney fees to Sarah Rose Masefield. We reverse and remand for proceedings consistent with this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Marc and Sarah divorced in May 2019. In October of that year, they filed dueling enforcement petitions accusing each other of violating the terms of their agreed divorce decree.[1] Relevant to the issues here, Sarah's petition alleged that

---

[1] The trial court entered an Agreed Final Decree of Divorce in May 2019 and an Agreed Final Decree of Divorce Nunc Pro Tunc in September 2019. The September 2019 decree corrects a clerical error and is, in all relevant respects, identical to the May 2019 decree.

Marc violated the decree by: (1) failing to provide documents necessary to complete the couple's 2017 federal income taxes; (2) failing to execute documents necessary to transfer property awarded to Sarah in the decree; and (3) interfering with Sarah's possession of the couple's child on numerous occasions.

Sarah lost two days of possession on one of those occasions, after Marc and the child were stranded out-of-state following a flight delay. The other occasions all involved a dispute about exactly where, and to whom, Marc must surrender the child at the end of his possessory periods. As relevant to that issue, the decree states:

> 2. Surrender of Child by MARC WAYNE MASEFIELD – MARC WAYNE MASEFIELD is ORDERED to surrender the child to SARAH ROSE MASEFIELD at the designated exchange locations herein below at the end of each period of possession.
>
> If the child is enrolled in daycare or school MARC WAYNE MASEFIELD is ORDERED to surrender the child to SARAH ROSE MASEFIELD at the end of each such period of possession at the designated exchange locations herein below and at the time ordered herein. SARAH ROSE MASEFIELD shall pick up the child at the designated exchange locations herein below and at the time ordered herein, and MARC WAYNE MASEFIELD is ORDERED to surrender the child to SARAH ROSE MASEFIELD at the designated exchange locations herein below and at the time ordered herein. . . .
>
> **5. Designated Exchange Locations - IT IS ORDERED that all exchanges shall take place at the child's daycare or school. IT IS FURTHER ORDERED that if the child's daycare or school is closed the exchanges shall take place in the front parking lot at the Market Street grocery store located at 985 West Bethany Drive, Allen, Texas 75013**. . . .
>
> 7. Designation of Competent Adult - Each Party may designate any competent adult to pick up and return the child, as applicable. IT IS

ORDERED that a Party or a designated competent adult be present when the child is picked up or returned.

In a July 2019 message, Sarah instructed Marc to drop the child off at the daycare on all Fridays following his possession periods, stating she was "designating *them* a competent adult" under the decree (emphasis added). Sarah did not identify any specific adult at the daycare to whom Marc should surrender the child. Regardless, Marc refused to even enter the daycare, insisting instead that Sarah retrieve the child from the daycare parking lot. Accordingly, Sarah alleged Marc violated the decree both by failing to surrender the child inside the daycare and by failing to surrender the child to her designated competent adult. She asked the trial court to hold Marc in contempt, jail him for up to 180 days, place him on ten years' community supervision, fine him $500 per violation, and order him to pay her attorney's fees.

Marc appeared pro se at the hearing on Sarah's enforcement petition. Before proceeding with the hearing, the trial court informed Marc that, because Sarah did not seek more than six months of jail time, he was not entitled to counsel. As to the allegations against him, Marc explained during the hearing that he did not sign the couple's 2017 tax return both because he did not know Sarah had already signed it and because he thought she had underreported her income, thus rendering the tax return fraudulent. He said he could not complete the forms needed to transfer the property awarded to Sarah in the decree because he did not have her account number,

–3–

and she would not respond to his requests for that information. And with respect to the interference allegations, Marc asserted he was not responsible for the flight delay that caused Sarah to lose two days of possession. Further, Sarah never designated an individual at the daycare to act as a competent adult, so he turned the child over to Sarah directly, as required by the decree. Upon further questioning from the court, however, Marc admitted he did not read many of the messages Sarah sent him, including the one in which she purported to designate "them" as a competent adult.

After hearing the evidence, the trial court found Marc in contempt as to all of the alleged violations. The court explained that it did not think the decree was confusing or ambiguous,[2] and it believed Sarah complied with the decree by designating a competent adult to take possession of the child at the daycare. If Marc did not read Sarah's messages, "that's on [him]." The court further commented that, although its "goal is not to encourage jail time," it would require Marc to finalize all documents necessary to facilitate the tax filings and property transfers before leaving the hearing. In addition, the trial court awarded Sarah $15,000 in attorney's fees.

Marc appealed and filed an alternative petition for writ of mandamus,[3] arguing that the contempt order and fee award are both void because the trial court failed to

---

[2] Perhaps contradicting that assertion, the trial court's order clarifies the decree, explaining that Marc must surrender the child to any competent adult Sarah designates at his school or daycare and that Marc must surrender the child inside the school or daycare, rather than in the parking lot, if the school or daycare is open during the exchange.

[3] By order dated June 9, 2020, we consolidated the mandamus proceeding with this appeal.

properly admonish him concerning his right to an attorney and his right against self-incrimination. He further contends: (1) certain aspects of the decree are too ambiguous to enforce by contempt; (2) his failure to timely surrender the child on one occasion is excused by a flight delay beyond his control; (3) he did not violate the decree by requiring Sarah to take possession of the child in the daycare parking lot; (4) the decree's deadline for providing tax documentation is unenforceable by contempt because it expired before the trial court entered the decree; (5) the decree does not establish a deadline for facilitating the property transfer; and (6) the fee award is not supported by sufficient evidence.

## THE ORDER IS REVIEWABLE ON APPEAL

Before reaching the merits of Marc's arguments, we must determine the extent of our appellate jurisdiction. *See Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 115 (Tex. App.—Dallas 2020, no pet. h.) (appellate courts are obligated to review *sua sponte* issues affecting jurisdiction because appellate jurisdiction is never presumed). Generally, we cannot review a contempt order on direct appeal. *See Herzfeld v. Herzfeld*, 285 S.W.3d 122, 132 (Tex. App.—Dallas 2009, no pet.). Thus, a party wishing to challenge a contempt order must seek either a writ of habeas corpus or a writ of mandamus, depending on the extent to which the trial court's order restrains the party's liberty. *See id.* If, however, "the trial court's judgment does not come within the confines of a true contempt order, then it should be

recharacterized," because "[i]t is not the form of the court's order, but the character and function of the order that determines its classification" for purposes of appellate jurisdiction. *See Khan v. Valliani*, 113 S.W.3d 922, 927 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992)); *Galtex Prop. Investors, Inc. v. City of Galveston*, 113 S.W.3d 922, 927 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

There are two types of contempt orders—civil and criminal—that serve distinct purposes. *Khan*, 113 S.W.3d at 927 (citing *Ex parte Hawkins*, 885 S.W.2d 586, 588 (Tex. App.—El Paso 1994, orig. proceeding)). A criminal contempt order punishes a party for disobeying a court order, with a maximum penalty of six months' confinement, a $500 fine, or both. *Id.* (citing TEX. GOV'T CODE § 21.002(b)). A civil contempt order, in contrast, coerces a party's compliance with a court order, usually through conditional penalties. *Id.*

The order here functions as neither a civil nor a criminal contempt order. Although the trial court found Marc was in contempt for violating the divorce decree, its order does not punish Marc with jail time or a fine, nor does it coerce Marc's compliance through conditional penalties. Instead, the order merely explains the manner in which Marc violated the decree, clarifies certain provisions of the decree disputed by the parties, orders Marc to pay any penalties ultimately assessed as a result of the delayed tax filing, and awards Sarah $15,000 in attorney's fees. Because

the order does not function as a true contempt order, we can review it on appeal, and mandamus is unavailable. *See id.*; *see also In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) ("Mandamus will issue only if . . . the aggrieved party has no adequate remedy by appeal.").

THE TRIAL COURT ERRED BY FAILING TO PROPERLY ADMONISH MARC

The fact that the trial court did not enter a true contempt order does not change the nature of the hearing on Sarah's enforcement petition. Under the Family Code, a trial court must determine whether incarceration is a possible result of any enforcement proceeding. *See* TEX. FAM. CODE § 157.163(a). If incarceration is possible, the trial court must inform a pro se respondent "of the right to be represented by an attorney and, if the respondent is indigent, of the right to the appointment of an attorney." *Id.* § 157.163(b).

Here, the record shows the enforcement proceedings could have resulted in Marc's incarceration. Thus, the trial court was required to inform Marc that he had a right to counsel. *See id.* § 157.163 (a), (b). But instead of informing Marc of that right, the trial court affirmatively misrepresented that, because Sarah did not seek more than six months of jail time, he had no right to counsel. This was clear error, and we are not persuaded by Sarah's arguments to the contrary.

Sarah argues that, because the trial court made no affirmative finding under subsection 157.162(a), we should infer that the trial court determined incarceration

was not a possibility, thus negating its obligation to admonish Marc under subsection 157.162(b). Even if we assume without deciding that we can infer a negative finding under subsection 157.162(a) in appropriate circumstances, the record here does not support such an inference.

Sarah's enforcement petition requested incarceration, and the trial court confirmed at the beginning of the hearing that Sarah sought to have Marc jailed for up to six months. The trial court then informed Marc that he was not entitled to counsel, based on its mistaken conclusion that his right to counsel depended on whether Sarah sought more than six months of jail time. Nothing in the record suggests the trial court had already concluded Marc would not face incarceration. In fact, the trial court implicitly threatened Marc with jail time at the end of the hearing, when it required Marc to sign the tax and property-transfer documents before leaving the court: "Look, I'm not -- my goal is not to encourage jail time. That's not what I want to achieve. But what we do need to have happen is these documents need to be finalized today, that is happening."

And because Marc faced possible incarceration, as well as an allegation of criminal contempt, he also had the right against self-incrimination. *See Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976); *Ex parte Snow*, 677 S.W.2d 147, 149 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Ex parte Harris*, 581 S.W.2d 545, 547 (Tex. App.—Fort Worth 1979, no writ). The trial court did not admonish him on

that right, and nothing in the record suggests Marc knowingly and voluntarily waived it. In the absence of such a waiver, the trial court erred by examining Marc concerning the allegations against him.

Sarah argues that any error in failing to properly admonish Marc was harmless because the trial court ultimately chose not to incarcerate him. We disagree. Even if we assume the trial court did not commit structural constitutional error by affirmatively misrepresenting that Marc was not entitled to counsel,[4] we are convinced the trial court's errors probably caused an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1).

The vast majority of the alleged violations concerned Marc's refusal to surrender the child directly to the child's daycare, rather than requiring Sarah to retrieve the child from the daycare parking lot. In finding that Marc violated the decree in that respect, the trial court emphasized Marc's failure to read Sarah's message purporting to designate "them"—referring to the daycare—as a competent adult. The daycare, of course, is not an "adult" capable of designation. But even if we assume (1) that Sarah's use of the word "them" refers to all competent adults working at the daycare and (2) that the decree allows Sarah to broadly designate an

---

[4] *See In re K.R.*, 63 S.W.3d 796, 799–800 (Tex. 2001) (noting that "the total deprivation of an accused's right to counsel" is a "structural" error that defies harm analysis); *but see Buster v. State*, 144 S.W.3d 71, 78 (Tex. App.—Tyler 2004, no pet.) ("Error in the trial court's admonishments regarding self-representation is a non-structural constitutional error subject to a harm analysis."); *see also In re B.C.*, 592 S.W.3d 133, 137 (Tex. 2019) (court's failure to provide required statutory admonishments about right to counsel was subject to harm analysis).

entire class of competent adults, without identifying any such adult by name, the fact remains that the trial court obtained Marc's damaging admission by violating his right against self-incrimination during a hearing at which he appeared pro se after the trial court misled him concerning his right to counsel. On this record, we cannot conclude the trial court's errors were harmless. *See In re B.C.*, 592 S.W.3d 133, 137 (Tex. 2019) (court's failure to provide required statutory admonishments about right to counsel was harmful where parent went unrepresented at key hearings); *In re S.R.*, No. 10-19-00235-CV, 2019 WL 7374736, at *2 (Tex. App.—Waco Dec. 31, 2019, pet. denied) (mem. op.) (court's failure to provide required statutory admonishments about right to counsel was harmful where parents went unrepresented at key hearings and evidence obtained at those hearings was used against parents at trial).

We reverse the trial court's enforcement order, along with its resulting fee award,[5] and remand the case to the trial court for proceedings consistent with this opinion.

191589f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

---

[5] *See In re Rivas-Luna*, 528 S.W.3d 167, 172 (Tex. App.—El Paso 2017, no pet.) (contempt order that is void for failure to properly admonish pro se defendant cannot support fee award).



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF E.W.M., A
CHILD

No. 05-19-01589-CV

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-53699-
2018.
Opinion delivered by Justice Carlyle.
Justices Myers and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the trial court's January 17, 2020 "Order of Enforcement by Contempt" is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this Court's opinion.

It is **ORDERED** that appellant Marc Masefield recover his costs of this appeal from appellee Sarah Rose Masefield.

Judgment entered this 7th day of January, 2022.